NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

EURODRIVE, INC., Respondent.

No. 82–1574.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 24, 1983.

Decided Jan. 12, 1984.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., Janette Johnson (argued), Cleveland, Ohio, for petitioner.

John C. Lombard (argued), Fred A. Ungerman, Jr., Coolidge, Wall, Matusoff, Womsley & Lombard, Dayton, Ohio, for respondent.

Before LIVELY, Chief Judge, KRUPANSKY, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

National Labor Relations Board (Board) applies for enforcement of its order, issued to Respondent Eurodrive, Inc. (Company), directing the Company to bargain collectively with Teamsters Local No. 957, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers (Union). On February 20, 1981, the Union filed a representation petition with the Board, seeking to represent the Company's production and maintenance employees. The Company and Union thereafter entered into a Stipulation for Certification Upon Consent Election. On April 30, 1981, twenty-eight ballots were cast in the election; fifteen employees voted for and twelve voted against union representation. The Company challenged the conduct of Richard Loy, the Union's representative and requested that either the election be set aside or a hearing be held to resolve issues raised.[1] The Regional Director investigated the Company's allegations of pre-election misconduct and recommended that the Company's objections be dismissed. Following the Board's adoption of the Regional Director's recommendation, the Company filed a motion for reconsideration with the Board. This motion was denied and, after the Company refused to bargain collectively, the Union filed an unfair labor practice charge with the Board. By Decision and Order, dated March 31, 1982, the Board granted general counsel's motion for summary judgment on the unfair labor practice charge and subsequently filed this application for enforcement. We deny enforcement of the Board's order.

The dispute in this instance concerns the conduct of Teamster organizer, Richard Loy. According to the Company, Loy held two meetings for employees prior to the election. At the first meeting, held eight days prior to the election, Loy indicated that, unlike the Company's sole black employee, Robert Howard, white employees needed the Union to protect their jobs because white employees were not protected by the equal opportunity laws. In an attempt to illustrate the "white's need for protection", Loy discussed the discharge of a white employee named Kim Morse. Morse had been dismissed approximately four weeks prior to the election because, despite repeated warnings, he directed racial harassment toward Howard. The harassment of Howard by Morse, which included racial slurs, jokes, insults and other comments, was tolerated by Howard for a considerable period of time before a complaint was made to management. Loy told those present at the meeting that Morse's discharge exemplified the "white's need for protection" and, further, promised that the Union could and would obtain his reinstatement with backpay. The Company also alleges that Loy pointed to Howard and stated that Howard would soon receive a paper to sign and, should he sign it, that Morse's reinstatement would be assured.[2] On the evening before the election, another meeting was held at which time Loy repeated his promise to have Morse reinstated. Based on these allegations, the Company claims that union organizer Loy made an effective appeal to racial prejudice which

---

1. The Company initially raised four objections to the conduct of the election. In its Exceptions to the Regional Director's Report on Objections, the Company sought review of the Regional Director's recommendations with respect to only three of the objections. However, in its brief to this court, the Company contends that only Objection No. 3, concerning the conduct of the Union's representative, should not have been overruled. Accordingly, only the Board's decision regarding Objection No. 3 is before this Court. *See* 29 U.S.C. 160(e); *NLRB v. Tennessee Packers, Inc., Frosty Morn Division,* 344 F.2d 948, 949 (6th Cir.1965).

2. The affidavit of Andrew Nuss, who had been employed at Eurodrive for approximately four years, indicates:

"During this meeting [on August 22, 1981] Mr. Loy also singled out our only black employee, Bobby Howard. He said that Bobby did not need the Union because he had the protection of the Equal Opportunity laws, while the rest of us had no protection without the Union.

Furthermore, Nuss' affidavit indicates that Loy used phrases such as "it was no sweat", "he had it in the bag", and "there was no way he could lose" in referring to the Union's ability to effect Morse's reinstatement.

interfered with the employee's ability to make a reasoned choice in the election.

■ When the party objecting to pre-election conduct can establish that an evidentiary hearing is required to resolve substantial and material factual issues, the Board may order the Regional Director to hold such a hearing. *NLRB v. Tennessee Packers, Inc., Frosty Morn Division,* 379 F.2d 172 (6th Cir.1967). In order to obtain a hearing, the party objecting to the pre-election conduct must proffer specific evidence which demonstrates that the election was unfair, *NLRB v. Basic Wire Products,* 516 F.2d 261, 263 (6th Cir.1975); *Harlan No. 4 Coal Co. v. NLRB,* 490 F.2d 117, 120 (6th Cir.), *cert. denied,* 416 U.S. 986, 94 S.Ct. 2390, 40 L.Ed.2d 763 (1974), and this evidence must "prima facie warrant setting aside the election." *NLRB v. Silverman's Men's Wear, Inc.,* 656 F.2d 53, 55 (3rd Cir. 1981). In reviewing whether the Board properly denied a hearing to the objecting party, the court must determine whether the Board acted arbitrarily in exercising its discretion. *E.g., NLRB v. A.J. Tower Co.,* 329 U.S. 324, 67 S.Ct. 324, 91 L.Ed. 322 (1946); *Harlan No. 4 Coal Co. v. NLRB,* 490 F.2d 117 (6th Cir.), *cert. denied,* 416 U.S. 986, 94 S.Ct. 2390, 40 L.Ed.2d 763 (1974).

■ An election will be set aside when the objecting party demonstrates that pre-election conduct "seeks to overstress and exacerbate racial feelings" through a deliberate appeal to racial prejudice.[3] *Sewell Manufacturing Company, Inc.,* 138 NLRB 66, 71 (1962). *See Silverman's Men's Wear,*

*Inc.,* 656 F.2d 53 (3rd Cir.1981). The Board itself enunciated the test used to determine whether pre-election appeals or arguments have no purpose except to exacerbate racial feelings:

> "So long ... as a party limits itself to *truthfully* setting forth another party's position on matters of racial interest ... we shall not set aside an election on this ground. However, the burden will be on the party making use of a racial message to establish that it was truthful and germane, and where there is doubt as to whether the *total conduct* of such party is within the described bounds, the doubt will be resolved against him."

*Sewell Manufacturing Company,* 138 NLRB 66, 71–72 (1962) (emphasis added). The principle to be applied from *Sewell* is that "an effective appeal to racial ... prejudice prima facie warrants setting aside an election." [4] *NLRB v. Silverman's Men's Wear, Inc.,* 656 F.2d 53, 58 (3rd Cir.1981). *See, NLRB v. Katz,* 701 F.2d 703 (7th Cir.1983) (The company's allegation that pre-election racial and religious slurs were made at a union organizational meeting established a prima facie case for setting aside the election.).

The Board acknowledges that Loy made the challenged comments, but asserts that the comments were merely "intemperate, abusive and inaccurate statements made by a union during an attempt to organize employees which statements are to be tolerated under the Act." *Baker Canning Company v. NLRB,* 505 F.2d 574, 576 (7th Cir.

---

**3.** We are mindful that the Board has retreated from its earlier requirement that elections be conducted under "laboratory conditions." *General Shoe Corporation,* 77 NLRB 124 (1948). However, the Board still seeks to create "ideal (election) conditions insofar as possible", *The Liberal Market, Inc.,* 108 NLRB 1481, 1482 (1954), and has repeatedly emphasized the importance of employees' free choice. *See, e.g., TRW-United Greenfield Division,* 245 NLRB 1135 (1979); *EDM of Texas, Div. of Chromalloy American Corp.,* 245 NLRB 934 (1979); *El Fenix Corporation,* 234 NLRB 1212 (1978).

**4.** The Board's decision in Sewell, which applies when the only purpose for challenged conduct

is to arouse the racial feelings of voters in an election, *Bancroft Manufacturing Company, Inc.,* 210 NLRB 1007, 1008 (1974), requires that an election be set aside if "the uninhibited desires of the employees cannot be determined". *The Gummed Products Company,* 112 NLRB 1092, 1093 (1955). The principle underlying this policy is that members of one race should "not be persuaded to vote for or against a union on the basis of invidious prejudices they might have against individuals of another race." *NLRB v. Sumter Plywood Corp.,* 535 F.2d 917, 924–25 (5th Cir.1976), *cert. denied,* 429 U.S. 1092, 97 S.Ct. 1105, 51 L.Ed.2d 538 (1977).

1974). Loy's comments concerning the equal employment opportunity laws, according to the Board, simply expressed his opinion that the sole black employee, as a member of a protected class, had more job security than the other employees. The Board further contends that Loy's statements indicating that the Company would have to reinstate Morse with backpay were no more than an expression of confidence that the Board would find that Morse had been unlawfully discharged. Accordingly, the Board does not believe that Loy's statements constituted an appeal to racial prejudice of sufficient seriousness to warrant a hearing. We disagree.

Pre-election statements which indicate that a union has made a deliberate appeal to racial prejudice prior to an election are material. *E.g., Sewell Manufacturing Company,* 138 NLRB 66, 71 (1962). In determining whether pre-election statements were intended to appeal to racial prejudice, both the Board and the reviewing court must consider the context in which these statements were made, *see, e.g., NLRB v. General Telephone Directory Company,* 602 F.2d 912, 915 (9th Cir.1979) (prior to determining whether an employer's pre-election statements are protected, court will consider the context in which the statements were made), and the "total conduct" of the person who made the statements. *E.g. Sewell Manufacturing Company,* 138 NLRB 66, 71 (1962). Prior to the election, racial tension existed between Howard and the Company's other employees;[5] this tension was due, in part, to the Company's decision to discharge Morse for racially harassing Howard. Accordingly, Loy's pre-election statements must be viewed in light of the pre-existing racial tension that existed at the time the alleged statements were made.

Loy's statement concerning the white employees' need for protection is, in itself, insufficient to establish any particular intent to exacerbate racial feelings among the employees prior to the election. Loy, however, did not simply inform the employees of the legal benefits available to minorities under the law or of the benefits available to all employees as a consequence of unionization. Instead, Loy decided to illustrate the "white's need for protection" by discussing the Company's recent decision to discharge Morse. Knowing that the Company discharged Morse for racially harassing Howard, the Company's sole black employee, and knowing that Morse's discharge aroused racial tension between Howard and the Company's other employees, Loy promised the other employees that the union could reinstate Morse with backpay if only Howard would cooperate. Loy then singled out Howard and informed the other employees that Howard's signature would assure Morse's reinstatement. Although some of Loy's statements were tangentially related to legitimate campaign issues, viewed in the context in which they were made, Loy's statements and total conduct placed undue emphasis on a racial issue which Loy must have known would exacerbate pre-existing racial tension among the employees prior to the election. Clearly, the Company's allegations raised a substantial and material issue; whether Loy made a deliberate appeal to racial prejudice which interfered with the employee's freedom of choice. Accordingly, we believe that the Board abused its discretion by refusing to grant the Company's request for a hearing.

Generally, when a reviewing court determines that a substantial and material question was presented to the Board, it remands the case for a hearing. *E.g., Kitchen Fresh,*

---

**5.** The Board concedes that "bigoted conduct" and racial tension existed among the employees prior to the election. It asserts, however, that the racial tension which existed between the Company's sole black employee and the other employees prior to the election was not a result of the Union's pre-election conduct. We accept the Board's conclusion in this regard. Clearly, the racial tension that existed in this case was not initially brought about as a result of the Union's actions. The crucial determination whether pre-election conduct is likely to affect the employee's ability to make a well reasoned and independent decision, however, does not depend necessarily upon the fault of the party *initially* responsible for the racial tension. In our view, a union that makes a deliberate attempt to exacerbate *existing* racial tensions prior to an election is as culpable as a union who *creates* racial tension to enhance its political strength.

*Inc. v. NLRB,* 716 F.2d 351 (6th Cir.1983). In this instance, however, we can discern no useful purpose to be served by a remand. The Board has conceded that union organizer Loy's pre-election statements were made,[6] and that his statements were made in an atmosphere of racial tension.[7] In our view, the undisputed evidence is alone sufficient to establish that Loy engaged in a subtle, but deliberate attempt to exacerbate racial feelings among the employees prior to the election.

The sole question which remains is whether Loy's attempt to exacerbate racial feelings among the employees was "likely to have an appreciable effect" on the employees' selection. *NLRB v. Gorbea, Perez & Morrell, S. en. C.,* 328 F.2d 679, 680 (1st Cir.1964). *See e.g., NLRB v. Katz,* 701 F.2d 703, 707 (7th Cir.1983) (Board's petition for enforcement of its bargaining order denied when court found that pre-election inflammatory comments "could have impaired" employees' freedom of choice); *Advertisers Manufacturing Company v. NLRB,* 677 F.2d 544 (7th Cir.1982) (Party challenging pre-election conduct must establish that such conduct impaired employees' freedom of choice); *NLRB v. Basic Wire Products,* 516 F.2d 261 (6th Cir.1975) (When pre-election conduct is challenged on the basis that it interfered with the election, the critical inquiry is whether employees were able to exercise free choice.).

In our view, Loy's statements were likely to have an appreciable effect on the employees' free choice. The proposed bargaining unit was small; that any employee would have been unaware of the racial harassment directed toward Howard is unlikely. Thus, the effectiveness of Loy's statements was multiplied by the already existing racial tension brought about by Morse's conduct and subsequent discharge.

Moreover, Loy's racial appeal was made twice during the eight day period before the election. Loy's second appeal occurred on the eve of the election. The Company was therefore powerless to respond to the remarks. Indeed, even if the Company had the opportunity to respond, to have done so may have further inflamed racial feelings. In light of these circumstances, we believe that Loy's attempt to exacerbate the racial tension that existed prior to the election was likely to have had an appreciable effect upon the employees' freedom of choice.

In summary, the undisputed facts are sufficient to establish that union organizer Loy engaged in a subtle, but deliberate attempt to exacerbate existing feelings of racial tension, and that this attempt was likely to have affected appreciably the employees' decision to vote for or against union representation. Accordingly, the Board's petition for enforcement of its order requiring the Company to bargain with the Union is DENIED.

---

6. In its brief, the Board states:

"With respect to job security, Loy stated that the Company's black employee, Howard, did not need the protection of the Union because he was protected by the equal opportunity laws, but that the white employees needed the Union to protect their jobs. At the same time, Loy indicated that Morse would be reinstated with backpay and that Howard would

be receiving a paper that he should sign so that Morse could be reinstated. (Citation to affidavits omitted). On April 29, the day before the election, the Union held another meeting, and Loy repeated that Morse would be reinstated with backpay (Citation to affidavit omitted).

7. *See* note 5, *supra.*