902 F.2d 34
 134 L.R.R.M. (BNA) 2568
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ROADWAY PACKAGE SYSTEM, INC., Petitioner/Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent/Cross-Petitioner.
 Nos. 89-5611, 89-5672.
 United States Court of Appeals, Sixth Circuit.
 April 24, 1990.
 
 Before CORNELIA G. KENNEDY and RYAN, Circuit Judges; and ANN ALDRICH, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Roadway Package Systems, Inc. (RPS) petitions this court to review the decision of the National Labor Relations Board (Board), 29 U.S.C. Sec. 160(f), and the Board cross petitions under 9 U.S.C. Sec. 160(e) for enforcement of its order. The Board found that RPS violated Secs. 8(a)(5) and (1) of the National Labor Relations Act (Act), 29 U.S.C. Secs. 158(a)(5) and (1), by refusing to bargain collectively with Local 299, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO (Teamsters), the duly elected and certified bargaining representative of RPS' pickup and delivery drivers. The Board ordered RPS to bargain with the Teamsters.
 
 
 2
 On appeal, RPS contends the Board improperly certified the Teamsters as the collective bargaining agent of RPS' drivers without conducting an evidentiary hearing concerning the discovery of a "Vote Teamster" sticker in the voting booth after the election. RPS also contends the Board should have conducted an evidentiary hearing on the Teamsters' alleged conflict of interest in representing RPS drivers. The parties have withdrawn the issue whether RPS drivers were independent contractors or employees within the meaning of the Act, 29 U.S.C. Sec. 152(3).
 
 
 3
 We conclude that substantial evidence supports the Board's decision not to hold a hearing on either the "Vote Teamster" sticker issue or the alleged conflict of interest claim. RPS failed to raise substantial and material questions of fact which, if accepted, would require the election be set aside.
 
 I.
 
 4
 RPS, a Delaware corporation, is engaged nationwide in the business of pickup and delivery of small packages. The alleged unfair labor practice giving rise to this action involves RPS' facility in Redford, Michigan.
 
 
 5
 On October 24, 1986, Teamsters filed a petition with the Board seeking certification to represent RPS drivers at the Redford facility for collective bargaining purposes, 29 U.S.C. Sec. 159(c). Following a hearing, the Board's regional director concluded that RPS drivers constituted a collective bargaining unit within the meaning of NLRA Sec. 9(b), 29 U.S.C. Sec. 159(b), and directed an election be held. A three-member panel of the Board affirmed the decision of the regional director.
 
 
 6
 The election was held on March 20, 1987, and Teamsters was elected the bargaining representative for RPS Redford facility drivers by a 27 to 10 vote, with 7 votes challenged. RPS objected to the election contending, in part, that a "Vote Teamster" sticker was discovered affixed to the interior of the voting both in clear violation of the Board's prohibition of campaign materials in the voting area.[1]
 
 
 7
 The regional director filed a supplemental decision, without a hearing, overruling RPS' objection to the election, finding it "evident that the sticker in the [voting] booth was not the work of the Board." The regional director determined that a hearing was unnecessary because RPS' evidence was insufficient to establish a prima facie case that the sticker impaired free choice or so violated the Board's election standards that a new election was required. The regional director then certified the Teamsters as the bargaining representative for RPS drivers. A three-member panel of the Board denied RPS' request for review. One panel member dissented.
 
 
 8
 On August 19, 1987, the Teamsters filed an unfair labor practice charge against RPS contending that RPS refused to bargain with the Teamsters, in violation of Secs. 8(a)(1) and (5) of the Act, 29 U.S.C. Secs. 158(a)(1) and (5). The general counsel of the National Labor Relations Board filed an unfair labor practice claim against RPS seeking an order requiring RPS to bargain collectively with the Teamsters.
 
 Section 8 provides, in part:
 
 9
 (a) It shall be an unfair labor practice for an employer-
 
 
 10
 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157[2] of this title;
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 (5) to refuse to bargain collectively with the representatives of his employees,
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 On October 19, 1987, an Administrative Law Judge (ALJ) consolidated this action with other unfair labor practice claims filed against RPS by several RPS drivers.[3] The general counsel filed a motion for summary judgment on the grounds that RPS admitted it refused to bargain with the Teamsters, and RPS failed to raise litigable issues in defense of the Sec. 8(a)(5) claim.
 
 
 17
 In defense of the unfair labor practice claim, RPS contended Teamsters was improperly certified because it had a conflict of interest which compromised its duty of loyalty to RPS' Redford facility drivers. RPS presented evidence attempting to establish that Teamsters and the United Parcel Service (UPS), RPS' chief competitor, conspired to have Teamsters represent RPS drivers to guard against Teamster's losing negotiating power with UPS, and to force RPS to pay the same level of wages and benefits as are paid UPS employees which, in turn, would drive RPS out of business or reduce its economic threat to UPS. The ALJ rejected this conflict of interest defense reasoning that "uniformity of industry standards is a legitimate bargaining objective" and RPS' conflict of interest allegation was based upon speculated bargaining misconduct and, therefore, was premature. The ALJ denied RPS' motion for reconsideration.
 
 
 18
 Thereafter, the ALJ granted summary judgment in favor of the general counsel on its unfair labor practice claim against RPS, and ordered RPS to cease and desist from refusing to recognize the Teamsters as the exclusive collective bargaining representative of RPS drivers employed at the Redford facility and to commence bargaining with the Teamsters.
 
 
 19
 RPS filed an exception to the ALJ's decision. On January 27, 1989, a three-member panel of the Board adopted the findings and order of the ALJ. In a footnote, the Board rejected RPS' claim to a hearing on the conflict of interest issue because the bulk of the evidence merely indicated that Teamsters were interested in obtaining a contract for RPS drivers similar to the contract for UPS drivers, and the sole evidence supporting RPS' contention involved a remark from a Teamster official from a different local union.
 
 
 20
 RPS petitioned this court for review of the Board's decision, 29 U.S.C. Sec. 160(f), and the Board cross-petitioned this court for enforcement of its order, 29 U.S.C. Sec. 160(e).
 
 II.
 
 21
 The issues on appeal involve the Board's refusal to grant RPS evidentiary hearings on the "Vote Teamster" sticker in the voting booth and the Teamsters alleged conflict of interest in representing both RPS and UPS drivers. As this court said in N.L.R.B. v. Pinkerton's, Inc., 621 F.2d 1322, 1325 (6th Cir.1980):
 
 
 22
 The Board's regulations permit the Regional Director to consider challenges and objections to an election based on an administrative investigation without a hearing if the objections raise no substantial and material factual issues in dispute which more appropriately may be resolved after a hearing. See 29 C.F.R. Sec. 102.69(d). The party seeking a hearing must clearly demonstrate that substantial and material facts are in dispute by making specific allegations and a proffer of proof which prima facie would warrant setting aside the election. (Citations omitted).
 
 
 23
 Our scope of review of the Board's decision is limited. N.L.R.B. v. Basic Wire Products, Inc., 516 F.2d 261, 263 (6th Cir.1975). The Board has broad discretion in conducting elections and resolving disputes concerning representation. Id. In reviewing the Board's denial of a hearing, we determine whether the Board acted arbitrarily in exercising its discretion. N.L.R.B. v. Eurodrive, Inc., 724 F.2d 556, 558 (6th Cir.1984). "If we find that the Board's decision was supported by substantial evidence and conformed with Board precedent, we will defer to it." C.J. Krehbiel Co. v. N.L.R.B., 844 F.2d 880, 882 (D.C.Cir.1988).
 
 A.
 
 24
 RPS contends a hearing is warranted because "the sticker was inherently capable of coercing and confusing the voters at the very same moment they exercised their franchise" and the sticker constituted unlawful electioneering and undermined the Board's neutrality. The Board counters that RPS failed to show by specific evidence that any alleged election misconduct interfered with the employees' exercise of free choice to such an extent that the election results were materially affected.
 
 
 25
 In order to set aside a representation election, a party must show that the election was not conducted fairly.
 
 
 26
 To meet this burden, the objecting party must show "not only that the unlawful acts occurred, but also that they interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election."
 
 
 27
 N.L.R.B. v. MacDonald's Industrial Products, Inc., 731 F.2d 340, 342 (6th Cir.1984) (citations omitted).
 
 
 28
 The Board agent conducting the election, while dismantling the voting booth at the close of voting, discovered a "Vote Teamster" sticker inside the booth. RPS objected to the election on the ground that the sticker amounted to partisan propaganda in the voting booth in direct violation of the Board's rule against campaign materials in the voting area.
 
 
 29
 The regional director requested RPS to submit evidence to support its contention. RPS submitted an affidavit from the RPS observer at the election which stated:
 
 
 30
 5. After the ballots were counted, Mr. Kirksey [the Board agent] put his papers away and started to remove the fabric screen from around the voting booth. As Mr. Kirksey was folding up the fabric screen, he discovered a "Vote Teamster" sticker on the inside of the screen, which was the side of the screen clearly in view of voters as they were marking their ballots. Mr. Kirksey removed the "Vote Teamster" sticker and continued to put away the voting booth.
 
 
 31
 The regional director accepted the affidavit as true and found the presence of the sticker in the voting booth did not create the impression that the Board favored the Teamsters; in fact, it was "evident that the sticker in the booth was not the work of the Board." The regional director further found the sticker's presence, under the circumstances described by RPS, did not impair the voters' exercise of free choice and did not so violate Board standards that the election must be voided. The regional director overruled RPS' objection, finding that the evidence presented failed to warrant setting aside the election and failed to raise substantial or material fact issues warranting a hearing. The Board denied RPS' request for review; Chairman Dotsen dissented.
 
 
 32
 The regional director's decision and the Board's affirmance of that decision were based on substantial evidence. The affidavit from the employer's election observer failed to establish any evidentiary basis establishing that the Board played a role in placing the sticker in the voting booth or that the sticker, by itself, was so coercive that it influenced voters free choice.
 
 
 33
 RPS also contends that, pursuant to Board regulations, the Board agent conducting the election must periodically inspect the voting booth. Contrary to RPS' position, the Board regulations are not mandatory but, rather, state "[T]he Board agent periodically should check the voting area and booths for electioneering materials including defaced notices of election." N.L.R.B. Casehandling Manual Sec. 11326.4 (emphasis added). In any event, RPS failed to submit evidence supporting the assertion that the Board agent failed to inspect the voting booth. We defer to the Board's decision that RPS failed to present substantial and material facts sufficient to warrant a hearing on the "Vote Teamster" sticker issue.
 
 B.
 
 34
 RPS contends that sufficient evidence was presented to establish a prima facie case for a conflict of interest claim against the Teamsters and the Board should have held a hearing because RPS established that the Teamsters' real strategy was to unionize RPS in order to put RPS out of business. The Board counters that RPS failed to carry the burden of showing that a conflict of interest problem endangered the collective bargaining process because the evidence merely establishes that the Teamsters sought a contract for RPS drivers that was similar to the contract for UPS drivers, a lawful objective.
 
 
 35
 At the unfair labor practice hearing, RPS presented three affidavits in support of its contention that the Teamsters organized RPS drivers in order to force the collapse of RPS. These affidavits from RPS drivers at the Grand Rapids facility stated that a local union agent told them the Teamsters wanted to "strangle" RPS and "force" RPS to negotiate a UPS type contract and, in the opinion of the affiants, that meant keeping RPS from hurting UPS and the Teamsters. However, these affidavits are based on hearsay opinion testimony and, even if accepted as true, they merely suggest that which is common knowledge, a union's strategy in organizing a nonunion employer may be designed to "force" the employer to recognize and negotiate with the union or, failing that, to go out of business.
 
 
 36
 The more damaging statement came from a former UPS manager now working for an RPS facility who said that, prior to leaving UPS, an agent of Teamsters Local 61 told him he was going to try to organize RPS' Hickory terminal to put RPS out of business before it can hurt UPS. However, this affidavit, in addition to being hearsay, is of dubious weight in that it is improbable that a union would organize a company and then force its demise, putting its members out of work. Furthermore, all other evidence, including teamsters' literature, emphasized that UPS level wages and benefits were sought for RPS drivers.
 
 
 37
 In all events, we are satisfied that the evidence presented failed to raise substantial and material questions of fact which would warrant setting aside the election. The Board properly exercised its discretion in denying a hearing.
 
 
 38
 The ALJ determined that the conflict of interest issue was premature and speculative since there was no evidence presented that the interest of RPS drivers would be subverted by the Teamsters' goals to obtain a UPS-type contract for RPS drivers, which incidentally benefits the unionized employees at UPS. The ALJ denied reconsideration. The Board agreed, finding that no documents from Local 299 supported RPS' claim and that the overwhelming evidence suggested that the Teamsters' intent was to obtain a contract similar to the one at UPS.
 
 
 39
 We think substantial evidence supports the ALJ's decision and the Board's affirmance of that decision. The evidence strongly indicates that the Teamsters were merely attempting to obtain a contract for RPS drivers similar to the union contract at UPS. Substantial evidence was not presented sufficient to show a conflict of interest or even to warrant a hearing on the question.
 
 
 40
 We conclude that the Board's refusal to conduct evidentiary hearings on the "Vote Teamster" sticker in the voting booth and the conflict of interest claim is supported by substantial evidence.
 
 
 41
 We defer to the Board's decision.
 
 
 42
 CORNELIA G. KENNEDY, Circuit Judge.
 
 
 43
 Concurring in part and dissenting in part.
 
 
 44
 I concur in that portion of Judge Ryan's opinion upholding the decision of the Board not to hold a hearing on the "Vote Teamster" sticker issue. However, I believe that the Board erred in ignoring the affidavits of persons other than Local 299 members.
 
 The Board's opinion states:
 
 45
 The thrust of that evidence, however, is that the Teamsters was [sic] interested in obtaining contractual terms for the Respondent's drivers that were similar to those of UPS's drivers. There is only one isolated statement that could be construed as directly supporting the Respondent's claim, and it involves a remark by a Teamsters official in a local other than Local 299. The only documents relating specifically to Local 299 do not support the Respondent's conflict of interests claim. Thus, the Respondent has not proffered evidence sufficient to require a hearing.
 
 
 46
 I agree with the Board's finding that the thrust of the evidence set forth by Roadway Package Systems, Inc. indicates that the Teamsters have attempted to seek a UPS-type contract for Roadway employees, and that this evidence alone does not demonstrate a conflict of interest. However, two of the affidavits set forth by petitioner support petitioner's contention. First, James Vanderjagt stated, "Burns [an agent of Teamsters Local 406 and ex-UPS driver] told us that the Teamsters wanted to 'strangle' RPS and 'force' RPS to negotiate a UPS-type contract.... Everything that Burns said to us came across as if RPS were taking something away from UPS and the Teamsters. Burns said, 'You guys are taking packages away from UPS.' " Joint App. at 322. Also, as the Board noted, the affidavit of Fred Lapish, a full-time coordinator for Roadway who was previously a center manager for UPS, stated:
 
 
 47
 Several months before I left United Parcel Service (UPS), I was contacted by the Secretary of Teamsters Local 61, Ron Keener.
 
 
 48
 * * *
 
 
 49
 * * *
 
 
 50
 I asked Keener if he was going to try to organize the Hickory RPS terminal. He stated he thought he had a good chance to organize the terminal.... He then stated: "We will put them out of business before they have a chance to hurt your business."
 
 
 51
 Joint App. at 347. I disagree with the Board that a statement rendered by one other than a member of Local 299 cannot support petitioner's claim. The petitioner's assertion was that both Local 299 and its international, the International Brotherhood of Teamsters, want to put RPS out of business. I find that ignoring the affidavits of persons other than Local 299 members was erroneous and would REMAND this issue to the Board for a determination of whether, in light of all of the evidence, a hearing is warranted.
 
 
 
 *
 The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 RPS also objected to the election on the grounds that Teamsters engaged in electioneering in and around the polling area in violation of Board rules and regulations. This objection was overruled by the regional director and is not an issue on appeal
 
 
 [2]
 Section 157 gives the employees the right "to form, join or assist labor organizations, [and] to bargain collectively through representatives of their own choosing...."
 
 
 [3]
 The resolution of the individual employees unfair labor practices claims are not on appeal