**NATIONAL LABOR RELATIONS BOARD, Petitioner, Cross–Respondent,**

v.

**HEARTSHARE HUMAN SERVICES OF NEW YORK, INC., Respondent, Cross–Petitioner.**

**Nos. 28, 41, Dockets 95–4173, 95–4205.**

United States Court of Appeals, Second Circuit.

Argued Oct. 17, 1996.

Decided March 12, 1997.

Richard A. Cohen, National Labor Relations Board, Washington, DC, for Petitioner, Cross–Respondent.

Peter M. Panken, Parker, Chapin, Flattau & Klimpl, LLP, New York City, for Respondent, Cross–Petitioner.

Before: NEWMAN, Chief Judge, and McLAUGHLIN, Circuit Judge.*

McLAUGHLIN, Circuit Judge:

The National Labor Relations Board seeks to enforce its order finding violations of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5), and requiring Respondent to cease and desist from refusing to bargain with the Union. Respondent filed a cross-petition to review the order.

## BACKGROUND

HeartShare Human Services of New York, Inc. ("HeartShare") is a private social service organization that provides services for developmentally disabled adults. HeartShare has several departments and operates numerous facilities in Brooklyn and Queens, New York. One of these departments is the Day Treatment Program, which operates three day treatment centers—two in Brooklyn, one in Queens, and all located within 5 to 10 miles of each other. Each provides disabled adults training in daily living activities, supervised recreational activities, and various therapies. The three centers have nearly identical, but independent operations.

In January 1994, the Office and Professional Employees Union Local 153, AFL–CIO (the "Union") filed a representation petition with the National Labor Relations Board's ("NLRB" or the "Board") Brooklyn Regional Office, seeking a representation election among the "rank and file" employees at the Francis Aiello Day Treatment Center ("Aiello"), one of HeartShare's three day treatment facilities. The NLRB Regional Director ordered a hearing regarding the Union's petition. HeartShare opposed the petition on the ground that the bargaining unit was inappropriate. The Regional Director found that the unit was appropriate, and ordered that an election be held among Aiello's senior instructors, assistant instructors, behavioral specialists, dietary aides, maintenance employees and receptionists.

HeartShare asked the NLRB to review the Regional Director's decision. The Board issued an order denying this request.

The election was held and in May 1994, the relevant employees at Aiello voted 24–20 in favor of the Union. HeartShare immediately filed two objections challenging the validity of the election. HeartShare claimed that, two days before the election, the Union interfered with employee free choice by distributing a handbill containing an allegedly inflammatory and impermissible racial appeal. HeartShare also complained that the Union representative created an atmosphere of fear and intimidation by threatening and harassing employees.

After investigation, the Regional Director recommended that a hearing be held to decide HeartShare's objections. Following the hearing, the Board's hearing officer issued a report recommending that the Board overrule HeartShare's objections and certify the results of the election.

HeartShare filed exceptions, challenging the hearing officer's findings and conclusions. HeartShare reasserted its argument that the election had been held in an inappropriate bargaining unit. It also argued for the first time that certain employees who had voted in the election were ineligible under the Supreme Court's decision in *NLRB v. Health Care & Retirement Corp. of America,* 511 U.S. 571, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994).

In January 1995, the Board rejected HeartShare's original objections and adopted the hearing officer's findings and recommendations. The Board also rejected, as untimely, HeartShare's attempt to relitigate the appropriateness of the bargaining unit and the alleged ineligibility of certain employees. Accordingly, the Board certified the Union as the exclusive representative of the Aiello employees.

HeartShare still refused to bargain with the Union. In response, the NLRB General Counsel filed a complaint against HeartShare, alleging that its refusal to bargain was

---

* The Honorable J. Edward Lumbard withdrew from the panel shortly before oral argument, and the appeal is being disposed of by the remaining members of the panel, who are in agreement.

*See* 2d Cir. R. 0.14(b); *Murray v. National Broad. Co., Inc.,* 35 F.3d 45, 47–48 (2d Cir.1994), *cert. denied,* 513 U.S. 1082, 115 S.Ct. 734, 130 L.Ed.2d 637 (1995).

an unfair labor practice, in violation of 29 U.S.C. § 158(a)(5). HeartShare admitted its refusal to bargain, but argued that the certification of the Union was improper because the representation election was: (1) held in an inappropriate bargaining unit; (2) marred by racial appeals from Union supporters; and (3) invalidated by high turnover in the bargaining unit.

The General Counsel then filed a motion for summary judgment, and the NLRB issued an order to show cause why that motion should not be granted. Again, HeartShare admitted its refusal to bargain, but argued that the Board's certification of the Union was improper. HeartShare reiterated its arguments against certification.

The NLRB issued a Decision and Order granting the General Counsel's motion for summary judgment, concluding that HeartShare offered no newly discovered evidence or special circumstance that would justify the Board reexamining its earlier decision. The Board also found HeartShare's post-election attempt to litigate the eligibility of certain employees in light of *NLRB v. Health Care & Retirement Corp. of America* contrary to the NLRB's long-standing policy against considering post-election claims of voter ineligibility. Finally, the Board rejected HeartShare's turnover defense on the ground that "turnover is not a valid basis for refusing to bargain ... in the instant circumstances." The NLRB thus found that HeartShare violated 29 U.S.C. § 158(a)(5), and issued an order requiring HeartShare to cease and desist from refusing to bargain, or otherwise interfering with the employees' exercise of their statutory rights.

The General Counsel has now filed an application for enforcement of the NLRB order in this Court, pursuant to 29 U.S.C. § 160(e). HeartShare has filed a cross-petition for review, pursuant to 29 U.S.C. § 160(f), seeking to set aside the NLRB's decision. HeartShare renews the same arguments: the inappropriateness of the bargaining unit, the taint of racial appeals during the election, and the high turnover in the bargaining unit.

## DISCUSSION

An employer violates Section 8(a)(1) and (5) of the National Labor Relations Act when it refuses to recognize and bargain with the duly certified representative of its employees. 29 U.S.C. § 158(a)(1) and (5). The only question on appeal is whether the Board acted properly in certifying the Union. *See NLRB v. Utell Int'l, Inc.*, 750 F.2d 177, 178 (2d Cir.1984). HeartShare contends that the NLRB's certification of the Union was improper because: (1) the representation election was held in an inappropriate bargaining unit; (2) the representation election was poisoned by racial appeals from Union supporters; and (3) the representation election is invalidated by high turnover in the bargaining unit.

Congress has given the NLRB broad discretion in the conduct and supervision of representation elections, and consequently the Board's decision earns considerable deference. *See NLRB v. A.J. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 327–28, 91 L.Ed. 322 (1946). Our review is limited to determining whether the Board reasonably exercised its discretion. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 490, 71 S.Ct. 456, 465–66, 95 L.Ed. 456 (1951). Accordingly, if we now find that the Board acted within its discretion in certifying the Union, HeartShare's refusal to bargain violates the NLRA. *NLRB v. Action Automotive, Inc.*, 469 U.S. 490, 494–97, 105 S.Ct. 984, 987–90, 83 L.Ed.2d 986 (1985); *Utell Int'l, Inc.*, 750 F.2d at 177; *Polymers, Inc. v. NLRB*, 414 F.2d 999, 1001 (2d Cir.1969).

### A. Fragmented Bargaining Unit

■ First, HeartShare argues that the NLRB improperly certified the Union because the Aiello Center constitutes an inappropriate bargaining unit. We disagree.

■ The NLRB has substantial discretion when it selects an appropriate bargaining unit. *See American Hosp. Ass'n v. NLRB*, 499 U.S. 606, 610, 111 S.Ct. 1539, 1542, 113 L.Ed.2d 675 (1991); *Staten Island Univ. Hosp. v. NLRB*, 24 F.3d 450, 455 (2d Cir. 1994). Its mandate is to select only "*an* appropriate unit, not the *most* appropriate

unit (citation omitted), and the NLRB's decision will stand unless arbitrary and unreasonable." *Staten Island Univ. Hosp.*, 24 F.3d at 455 (citing *Continental Ins. Co. v. NLRB*, 409 F.2d 727, 728 (2d Cir.1969)).

■ When selecting an appropriate bargaining unit, the NLRB employs the so-called "single-facility presumption," that employees in a separate facility of a multi-facility operation "should be presumptively treated as a separate bargaining unit." *Staten Island Univ. Hosp.*, 24 F.3d at 456; *see also NLRB v. Catherine McAuley Health Ctr.*, 885 F.2d 341, 345 (6th Cir.1989). Although we once had held that "the single-facility presumption [was] inapplicable in the health care context," *Long Island Jewish–Hillside Med. Ctr. v. NLRB*, 685 F.2d 29, 34 (2d Cir.1982), we have since abandoned that view. Our current position is that "the NLRB has good reasons to use the single-facility presumption [in the health care field]." *Staten Island Univ. Hosp.*, 24 F.3d at 457.

■ The party challenging the composition of a single-facility bargaining unit can rebut the presumption by showing that the single-facility unit is inappropriate. This is demonstrated by employing the traditional test used to determine whether a group of employees has a sufficient community of interests to justify defining it as a bargaining unit.

> The degree of shared interest is measured by eight factors: geographic proximity, similarity of skills and functions, similarity of employment conditions, centralization of administration, managerial and supervisory control, employee interchange, functional integration of the employer, and bargaining history.

*Staten Island Univ. Hosp.*, 24 F.3d at 454; *see also Catherine McAuley Health Ctr.*, 885. F.2d at 345; *NLRB v. Stevens Ford, Inc.*, 773 F.2d 468, 473 (2d Cir.1985).

HeartShare has failed to rebut the "single-facility" presumption. In HeartShare's case, the geographic proximity factor "neither compels nor precludes the NLRB's decision" because HeartShare's three sites are separate, but only by five to ten miles. *See Staten Island Univ. Hospital*, 24 F.3d at 455.

The skills and functions factor likewise offers little guidance. *See id.* The NLRB acknowledges that all three sites offer the same services to developmentally disabled adults, and therefore, employees at the three centers use the same skills and serve the same function.

The similarities in employment conditions and administrative centralization factors "present conflicting considerations." *Id.* All three sites have identical policies on fringe benefits, initial wage rates, and personnel practices. Additionally, there is some administrative centralization of the three HeartShare day treatment centers. HeartShare employs a Director of Programs, who operates out of the central office and oversees the entire Day Treatment Program.

Despite a degree of centralized administration, the three sites remain independently supervised. The Director of Programs employs three coordinators who are responsible for the day to day operations of each site. Under the coordinator, each facility employs other managers including an assistant coordinator, an administrative assistant and various unit coordinators, all of whom have authority to hire, fire, discipline, and evaluate employees at their particular location.

The employee interchange factor supports the NLRB's decision. Each facility has its own staff and there is no routine interchange of employees among the three sites. Not surprisingly, if one facility becomes particularly busy, an employee from another center may lend a hand, but usually only for a day or two. This is the exception not the rule. Additionally, if there is a job opening at one facility, employees from another site may apply; however, they are required to follow the same procedures as non-HeartShare applicants. Selections are based on merit, and employees from related facilities are given no preference, unless all else is equal.

The functional integration of the employer factor also supports the NLRB's decision. The three facilities operate independently, and do not depend on each other for any services. Additionally, there is almost no

patient transfer among the facilities, which supports a finding that the sites function independently. *See Staten Island Univ. Hospital*, 24 F.3d at 456.

Lastly, the bargaining history factor is irrelevant because prior to the current election there is no bargaining history to consider.

Additionally, not all eight factors need always be explicitly assessed, and a strong showing on just a few of the factors may suffice to sustain the Board's decision, which is entitled to considerable deference on such matters. In HeartShare's case, in light of the relevant factors, the NLRB's decision that HeartShare failed to rebut the presumption that the Aiello Center constituted a single bargaining unit was neither arbitrary nor unreasonable.

HeartShare also maintains that the bargaining unit was inappropriate because certain employees who voted were ineligible under *NLRB v. Health Care & Retirement Corp. of America*, 511 U.S. 571, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994). We decline HeartShare's invitation to reach this issue because the Board's prohibition against post-election challenges to voter eligibility is well established and nothing in the Supreme Court's decision in *Health Care & Retirement Corp. of America* requires otherwise. *See NLRB v. A.J. Tower Co.*, 329 U.S. 324, 67 S.Ct. 324, 91 L.Ed. 322 (1946).

## B. Racial Appeals

■ HeartShare's second contention is that the Board improperly certified the Union because the election was marred by inflammatory racial appeals. We disagree.

■ Appeals to racial prejudice during a representation election " 'create conditions which make impossible a sober, informed exercise of the franchise.' " *Utell*, 750 F.2d at 178 (quoting *Sewell Mfg. Co.*, 138 N.L.R.B. 66, 71 (1962)). On the other hand, not every statement with a racial overtone will invalidate an election. "[A]n election will not be set aside so long as a party … does not deliberately seek to overstress and exacerbate racial feelings by irrelevant, inflammatory appeals." *Utell*, 750 F.2d at 178 (internal quotations and citation omitted).

Two days before the election, Union supporters distributed a multi-page handbill containing the following statement: "HeartShare wants to control you as if you were still slaves in the cotton field.... Their apartheid has been seriously shaken to its very core and you have the power by voting the union in to crumble their corrupt racists empire."

We do not believe that the Union's references to a "racists empire," "slaves in the cotton fields," and "apartheid" risked undermining the fairness of the election. During an election that lasted approximately five months, which included countless leaflets and speeches, three sentences in one multi-page handbill hardly constitutes a "sustained" appeal to racial prejudice. *See Utell Int'l, Inc.*, 750 F.2d at 180; *NLRB v. Hood Furniture Mfg. Co.*, 941 F.2d 325, 331 (5th Cir.1991).

■ While an isolated reference to race can constitute a sustained inflammatory racial appeal, there must be a history of pre-election racial tension. *See NLRB v. Eurodrive, Inc.*, 724 F.2d 556, 558 (6th Cir.1984). In HeartShare's case there is no such history and HeartShare does not suggest the contrary.

Additionally, we do not believe that the Union's statements constitute "deliberate inflammatory appeals designed to incite racial hatred." *Utell Int'l, Inc.*, 750 F.2d at 179. The Union's statements are not inflammatory because they "urge[ ] the employees to vote for the union *not* by appealing to and arousing their racial prejudice, but rather by contending that … [HeartShare] was taking advantage of their inability to protect their own interest because of their minority status." *State Bank of India v. NLRB*, 808 F.2d 526, 541 (7th Cir.1986). This case falls comfortably within the line of cases not requiring the invalidation of an election because they involve "circumstances in which a union has attributed racial discrimination to the employer, or in which there appears an isolated racial slur." *Carrington S. Health Care Ctr., Inc. v. NLRB*, 76 F.3d 802, 806 (6th Cir.1996).

We conclude that the Union's isolated statements in a pre-election flyer were not

pervasive enough or of a sufficiently inflammatory nature to invalidate the election.

### C. High Turnover

HeartShare's final argument is that the NLRB improperly certified the Union because there has been considerable turnover since the election. Once again, we disagree.

In *NLRB v. Long Island College Hospital,* we noted that

> [b]argaining orders have been enforced despite long delay and employee turnover so that an employer does not profit by its wrongful refusal to bargain:
>
> A union that has been certified by the Board as a bargaining representative after a representation election normally enjoys an irrebuttable presumption of majority status for one year following the certification.... Apparent loss of majority status and delay in certification do not normally constitute "unusual circumstances" [to rebut this presumption].... [Refusing to enforce the bargaining order] gives an employer incentive to disregard its duty to bargain in the hope that over a period of time a union will lose its majority status. *NLRB v. Star Color Plate* Serv., 843 F.2d 1507, 1508–09 (2d Cir.1988); *see also Glomac Plastics, Inc. v. NLRB*, 592 F.2d 94, 102 (2d Cir.1979)."

*NLRB v. Long Island College Hosp.*, 20 F.3d 76, 82–83 (2d Cir.1994) (citations edited).

In HeartShare's case, the election was held among 45 employees on May 12, 1994. By the time the NLRB considered the validity of the bargaining unit and the representation election in January 1995, ten of the bargaining unit employees who had voted in the election left HeartShare, and the bargaining unit had grown from 45 to 57 employees. While it is true that, based upon these numbers, there may not be a present majority of employees who favor the Union, these circumstances fall far short of what is necessary to order a new representation election. *See NLRB v. Star Color Plate Serv.*, 843 F.2d 1507, 1508–09 (2d Cir.1988); *Glomac Plastics, Inc. v. NLRB*, 592 F.2d 94, 102 (2d Cir.1979). This is particularly true where a major cause of the delay has been an employ-er's refusal to bargain. *See Star Color Plate Serv.*, 843 F.2d at 1509.

### CONCLUSION

We have considered all of HeartShare's additional arguments and find them to be without merit. The cross-petition for review is denied. The Board's petition for enforcement is granted.