NATIONAL LABOR RELATIONS
BOARD, Appellant,

v.

PHOENIX PROGRAMS OF NEW
YORK, INC., Appellee.

No. 00–4078.

United States Court of Appeals,
Second Circuit.

Jan. 31, 2001.

Aileen A. Armstrong, Washington, DC; Fred L. Cornnell, Jr., Leonard R. on the brief, for petitioner.

James R. Hayes, New York, NY; Kelley, Drye & Warren on the brief, for respondent.

Present JACOBS, STRAUB and SACK, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the application for enforcement be GRANTED.

Pursuant to the National Labor Relations Act, as amended ("Act"), 29 U.S.C.A. § 160(e), the NLRB applies to this Court for enforcement of its Decision and Order dated December 21, 1999 requiring Phoenix Programs of New York, Inc. ("Phoenix") to cease and desist from its unfair labor practice as well as affirmatively requiring it to commence bargaining with District 6, International Union of Industri-

al, Service, Transport and Health Employees ("Union").

Phoenix is a nonprofit subsidiary of Phoenix House Foundation Inc.,* which administers thirteen drug treatment facilities in New York State. One of these facilities is located at 164 West 74th Street, New York, New York ("West 74th Street Facility"). On June 1, 1999 the Union petitioned Region 2 of the National Labor Relations Board ("Region 2") to represent a unit of counselors and cooks at the West 74th Street Facility. This petition was amended on June 18, 1999 to include in the bargaining unit the maintenance employees at the facility.

A representation hearing was held before the Regional Director on June 18, 1999. Phoenix argued that the proposed bargaining unit was inappropriate and should include all counselors, cooks and maintenance employees of all thirteen facilities in New York State. In the alternative, Phoenix argued that the bargaining unit should include the relevant employees of the eleven facilities located in the New York metropolitan area. On July 16, 1999 the Regional Director found that the Union's proposed bargaining unit was appropriate. The NLRB denied Phoenix's request for a review of that decision.

At an election on August 12, 1999, the counselors, cooks and maintenance employees of the West 74th Street Facility voted 6–5 in favor of Union representation. Region 2 issued a Certificate of Representation to the Union on August 20, 1999. The Union filed a charge against Phoenix on September 1, 1999, alleging that it had refused to bargain. On October 20, 1999, the NLRB General Counsel issued a complaint alleging that Phoenix's refusal to

---

* Phoenix Programs of New York, Inc. and Oxford Project, Inc. are the two subsidiaries of Phoenix House Foundation, Inc. that comprise the New York Region clinical operations and jointly operate thirteen treatment facilities located in New York State. They are treated as the same employer for the purposes of this decision.

bargain with the Union violated Section 8(a)(1) and (5) of the Act. In answering the Complaint, Phoenix conceded its refusal to bargain with the Union but defended that refusal on the ground that the bargaining unit was inappropriate. On November 19, 1999 the General Counsel filed a motion for summary judgment. The NLRB issued an order transferring the proceeding to itself and demanding that Phoenix show cause as to why the motion should not be granted.

On December 21, 1999 the NLRB issued a Decision and Order granting the motion for summary judgment on the ground that all the issues raised by Phoenix were or could have been raised at the representation hearing. Because the Regional Director had already found the bargaining unit appropriate, the Board concluded that Phoenix's failure to bargain with the Union constituted an unfair labor practice in violation of Section 8(a)(1) and (5). The Board ordered Phoenix to cease and desist from its unfair labor practice and affirmatively ordered it to commence bargaining with the Union upon request.

In its application for enforcement of its Order, the NLRB argues (i) that it acted within its broad discretion in finding that the counselors, cooks and maintenance workers of the West 74th Street Facility constituted an appropriate bargaining unit and (ii) that Phoenix failed to rebut the presumption that the employees of a single facility in a multi-facility organization should be treated as an independent bargaining unit. Therefore, because the bargaining unit is appropriate, Phoenix violated the Act in refusing to bargain. We agree.

An employer commits unfair labor practice in violation of the Act if it "refuse[s] to bargain collectively with the representatives of [its] employees" or "interfere[s] with, restrain[s], or coerce[s] employees in the exercise of" their rights under Section 7 of the Act. 29 U.S.C.A. § 158(a)(5), (1). Section 7 gives employees "the right to self-organize ... [and] to bargain collectively through representatives of their own choosing. ..." 29 U.S.C.A. § 157. Phoenix concedes that it refused to bargain with the Union; the only issue is whether the certification of the Union as the bargaining representative of this group of employees was appropriate.

The NLRB is given broad discretion in determining an appropriate bargaining unit. *See NLRB v. Coca–Cola Bottling Co.*, 191 F.3d 316, 321 (2d Cir. 1999); *NLRB v. Heartshare Human Servs.*, 108 F.3d 467, 470–71 (2d Cir.1997). In reviewing the Board's determination, "[t]he NLRB's selection of an appropriate bargaining unit will stand unless found to be unreasonable and arbitrary." *Coca–Cola Bottling Co.*, 191 F.3d at 321. In addition, the factual findings on which the Board bases its unit determination should be affirmed if they are "supported by substantial evidence, viewing the record as a whole". *Id.*

The NLRB's determination "requires selection of *an* appropriate unit, not the *most* appropriate unit". *Staten Island Univ. Hosp. v. NLRB*, 24 F.3d 450, 455 (2d Cir.1994). In selecting an appropriate bargaining unit, the NLRB applies the "single-facility presumption": employees in an individual facility of a multi-facility organization are "presumptively treated as a separate bargaining unit." *Staten Island Univ. Hosp.*, 24 F.3d at 456. Phoenix, as employer, bears the burden of rebutting this presumption by showing that the employees of the West 74th Street Facility have a "sufficient community of interests" with the employees of the other twelve facilities to warrant treating them as the same bargaining unit. *Heartshare*, 108 F.3d at 471. In determining whether

such a shared interest between facilities exists to rebut the presumption, the Board should examine eight factors: (1) geographic proximity, (2) similarity of skills and functions, (3) similarity of employment conditions, (4) centralization of administration, (5) managerial and supervisory control, (6) employee interchange, (7) functional integration of the employer, and (8) bargaining history. *See id.* "[N]ot all eight factors need always be explicitly assessed, and a strong showing on just a few of the factors may suffice to sustain the Board's decision, which is entitled to considerable deference on such matters." *Id.* at 472.

■ The record is sufficient to support the Board's determination that Phoenix has failed to rebut the single-facility presumption. While the West 74th Street Facility is geographically close to some of the other facilities, it is hours away from others. And although the skills and functions of the employees at various facilities are nominally the same, there is evidence that variations exist depending on the individual facility's client population.

The other factors all suggest that the West 74th Street Facility operates independently and with considerable autonomy. True, central management oversees the personnel decisions made by the individual facility directors and signs off on decisions to hire, fire or give wage increases to individual employees at the facility. But the local facility director is the person making the decisions and there is evidence that the director's decision to hire or fire a certain individual is rarely reversed by central management, and that the director has the final word as to how much of a pay increase an employee will get within a given range set by central management. In addition, pay scales differ, depending on the funding sources at particular programs.

There are isolated incidents in which employees from one facility have temporarily transferred to another facility; for example to help a new facility get off the ground. But the standard procedure appears to be that employees desiring a lateral or promotional transfer to another facility must apply through the regular channels. Temporary transfers are the exception, not the rule. Furthermore, employees at one facility who are senior to employees at another facility are not given automatic preference if they wish to transfer.

There is no evidence that employees from one facility float between or among various facilities at the deployment of central management. Although one of the maintenance workers does work for another facility on West 80th Street, he works out of the West 74th Street Facility and keeps his tools and equipment there. Similarly, although one of the cooks prepares some meals for the West 80th Facility, which lacks its own kitchen, all of the work he does is performed at the West 74th Street Facility.

Because the evidence of a shared community of interests among the various facilities is insufficient to rebut the single-facility presumption, we defer to the conclusions of the Board and agree that the counselors, cooks and maintenance workers of the 74th Street Facility formed an appropriate bargaining unit. Therefore, Phoenix acted in violation of Section 8(a)(1) and (5) in refusing to bargain.

For the reasons set forth above, the application to enforce the order is hereby GRANTED.