In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 16-1360 & 16-1395

FEDEX FREIGHT, INC.,

*Petitioner/Cross-Respondent*,

*v.*

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner*,

*and*

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 439,

*Intervenor*.

Petition for Review and Cross-Application for Enforcement of an
Order of the National Labor Relations Board.
363 NLRB 126, No. 32-CA-164936

ARGUED SEPTEMBER 16, 2016 — DECIDED OCTOBER 12, 2016

Before POSNER, RIPPLE, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. The petitioner, FedEx Freight, Inc.,
a subsidiary of FedEx Corporation, uses trucks rather than
planes to transport freight. This case concerns the workers at

its terminal in Stockton, California, an inland seaport, at which the company employs 50 truck drivers and 27 dock-workers—the latter use forklifts to load and unload the trucks that use the terminal. A Teamsters Local petitioned the Labor Board to be permitted to organize the drivers. Rejecting the company's contention that the local should represent the dockworkers as well on the ground asserted by the company that the drivers and the dockworkers share a community of interest, the Board concluded that a drivers-only unit was proper and submitted the issue to a secret-ballot election of the drivers, who voted to be represented by the local union in collective bargaining. The company asks us to overrule the Board, and the Board asks us to enforce its order.

At the oral argument the company's lawyer said that the reason there should be a single union for both the drivers and the dockworkers is that if the latter were included in the vote on whether to unionize "we [FedEx Freight] think we'd have a better chance of winning the election"—it's a win for the company if the employees don't unionize. That however is not a reason recognized in the National Labor Relations Act for rejecting the certification of a union for collective bargaining, and is tangential to whether or not different worker groups have a community of interest.

The company also argues, however, that there should be a single union because the drivers and the dockworkers have the same employment interests and concerns, and on that ground as well it asks us to set aside the Board's approval of a drivers-only union at the Stockton terminal. The Board and the Teamsters local of course disagree.

The statutory criterion for whether a union can represent a unit of workers is whether the unit is "appropriate" for collective bargaining, 29 U.S.C. § 159(a), which as a practical matter requires a determination that the members of the unit have common employment concerns—a "community of interest"—different from the concerns of the company's other employees (if there are other employees). If the drivers in this case had a community of interest because they did the same work, were paid the same, and received the same benefits, yet the dockworkers did similar work (it could not be identical work, however, because their work consists of moving freight loads by forklift rather than by truck), worked the same number of hours, were paid the same as the truck drivers, and received the same benefits, they might well be thought to be part of the same community of interest as the truck drivers. The focus of analysis should be on the similarity or dissimilarity in working conditions across different groups of workers at the Stockton terminal rather than on the similarity or dissimilarity of the employment conditions of just one of the groups, the drivers.

But while by clinging to the unhelpful term "community of interest" (unhelpful except when modified by the adjective "distinct," which clarifies it considerably) the Board muddied the waters a bit, it also took pains to compare the two groups and found on the basis of compelling evidence that they differ significantly. The drivers work full time, the dockworkers only part time. And the drivers are paid about twice as much as the dockworkers though they have less physically strenuous, and probably safer, work, because maneuvering a forklift is quite difficult and potentially quite dangerous. According to *Wikipedia*, "Forklift," https://en.wikipedia.org/wiki/Forklift (visited Oct. 11, 2016),

An important aspect of forklift operation is that most [fork-lifts] have rear-wheel steering. While this increases maneuverability in tight cornering situations, it differs from a driver's traditional experience with other wheeled vehicles. … [A] critical characteristic of the forklift is its instability. The forklift and load must be considered a unit with a continually varying center of gravity with every movement of the load. A forklift must never negotiate a turn at speed with a raised load, where centrifugal and gravitational forces may combine to cause a disastrous tip-over accident.

The company's truck drivers spend most of their workday outside the terminal, while the dockworkers remain inside it. The truck drivers have two or more weeks of paid vacation time plus seven paid holidays and half a dozen "personal days," while the dockworkers must use their personal days to cover illness, family emergencies, vacations, and holidays. The two groups can sign up for the same health insurance plan and contribute to a 401(k) plan, but the record says nothing about dental insurance or whether benefits become available to both part-time and full-time workers after the same amount of time with the company. FedEx Freight's lawyer told us at oral argument that the drivers and dockworkers have identical benefits; they don't.

Granted, the Board remarked some differences between the two worker groups that seem marginal, such as that the company requires the drivers but not the dockworkers to take meal breaks and to wear uniforms and that the drivers require licensure and the dockworkers do not. These differences may help *explain* the wage differences, but it is the *existence* of substantial wage and benefits differences that count and they are documented in the record.

The record is clear that the dockworkers are second-class citizens of the employment force at the Stockton terminal when all benefits and costs are toted up, and this suggests a potential for serious discord should the dockworkers be placed in the same union as the drivers. They would be pushing for equality of compensation and of conditions of work generally. There would it is true be expectation of such strife if the dockworkers were to form their own union to bargain separately with their employer, but there is no indication that they seek to do that or that if they did any union would be interested in representing so small and, more to the point, so impecunious a group—a group that might not be able to pay union dues adequate to induce a union to engage in collective bargaining for them. And consistent with 29 U.S.C. § 159(c)(5), which states that "in determining whether a unit is appropriate … the extent to which the employees have organized shall not be controlling," the Board did not give controlling weight to the fact that the union had already organized the drivers.

The company takes issue with the Board's ruling in *Specialty Healthcare and Rehabilitation Center of Mobile* (*Specialty Healthcare*), 357 N.L.R.B. 934, 934 (2011), that "in cases in which a party contends that a petitioned-for unit containing employees readily identifiable as a group who share a community of interest is nevertheless inappropriate because it does not contain additional employees, the burden is on the party so contending to demonstrate that the excluded employees share an *overwhelming* community of interest with the included employees." The word that we've italicized is the focus of the company's criticism; it argues that the word imposes too heavy a burden of proof on the employer in a labor dispute. But "overwhelming community interest" is

not the invention of the *Specialty Healthcare* case; one can find it in two 40-year-old NLRB cases: *Jewish Hospital Association of Cincinnati*, 223 N.L.R.B. 614, 617 (1976), and *Chatham Towing Co, Inc.*, 226 N.L.R.B. 502, 502 (1976); and in *Blue Man Vegas v. NLRB*, 529 F.3d 417, 421 (D.C. Cir. 2008). Moreover, "overwhelming" appears to be treated by the NLRB as a synonym for "inappropriate," *Country Ford Trucks, Inc. v. NLRB*, 229 F.3d 1184, 1189 (D.C. Cir. 1984), for "truly inappropriate," *id.*, and for "clearly inappropriate," *Dunbar Armored, Inc. v. NLRB*, 186 F.3d 844, 847 (7th Cir. 1999)—terms that pull the sting of "overwhelming."

Enough; whatever the precise force of "overwhelming" in *Specialty Healthcare*, it is evident that the community of interest between the truck drivers and the dockworkers not only is in no sense overwhelming but in fact is slight, owing to the differences in working conditions and benefits between the two types of worker and the undeniable danger of strife between the drivers and the dockworkers should they be placed in the same bargaining unit.

FedEx Freight's petition to decertify the union is denied and the Labor Board's cross-petition for enforcement of its certification order is granted.