15-2442-ag, 15-4106-ag
*Constellation Brands, U.S. Operations, Inc. v. NLRB*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2016

Nos. 15-2442-ag, 15-4106-ag

CONSTELLATION BRANDS, U.S. OPERATIONS, INC., DBA WOODBRIDGE
WINERY,
*Petitioner–Cross-Respondent,*

v.

NATIONAL LABOR RELATIONS BOARD,
*Respondent–Cross-Petitioner,*

TEAMSTERS LOCAL UNION 601,
*Intervenor.*

Petitions for review and enforcement of orders of the National Labor
Relations Board

ARGUED: AUGUST 24, 2016
DECIDED: NOVEMBER 21, 2016

Before: WALKER, CABRANES, and LOHIER, *Circuit Judges*.

───────────

This case presents two questions. The first is whether the framework for evaluating proposed bargaining units set forth in *Specialty Healthcare & Rehabilitation Center of Mobile*, 357 N.L.R.B. 934 (2011), is unlawful. Under this framework, the National Labor Relations Board (the "Board") uses a two-step analysis to determine whether a union's proposed bargaining unit consists of employees who share a "community of interests" and does not arbitrarily exclude other employees. Several sister circuits recently approved this standard, but we have yet to opine on this question. The second question is whether the Board properly applied the *Specialty Healthcare* framework in its order at issue in this case.

We hold the *Specialty Healthcare* framework to be valid, as our sister circuits have, and to be consistent with this Court's precedent. We conclude that the Board did not properly apply the *Specialty Healthcare* framework, however, in its decision and order against Constellation Brands, U.S. Operations, Inc., d/b/a Woodbridge Winery. In approving the petitioned-for collective bargaining unit, the Board did not analyze at step one of the *Specialty Healthcare* framework whether the excluded employees had meaningfully distinct interests from members of the petitioned-for unit in the context of collective bargaining that outweigh similarities with unit members.

Accordingly, we **GRANT** the petition for review, **DENY** the Board's cross-petition for enforcement, and **REMAND** the cause to the Board for further proceedings consistent with the record of this matter and this opinion.

———

SHAY DVORETZKY (David Raimer, Willis J. Goldsmith, *on the brief*) Jones Day, Washington, DC, *for Petitioner–Cross-Respondent*.

GREG P. LAURO, Attorney (Jennifer Abruzzo, Deputy General Counsel; John H. Ferguson, Associate General Counsel; Linda Dreeben, Deputy Associate General Counsel; Julie B. Broido, Supervisory Attorney, *on the brief*), *for* Richard F. Griffin, Jr., General Counsel, National Labor Relations Board, Washington, DC, *for Respondent–Cross-Petitioner*.

MATTHEW J. GINSBURG, AFL-CIO, Washington, DC (James B. Coppess, AFL-CIO, Washington, DC; Robert Bonsall, Beeson, Tayer & Bodine, Sacramento, CA, *on the brief*), *for Intervenor*.

———

3

JOSÉ A. CABRANES, *Circuit Judge*:

This case presents two questions. The first is whether the framework for evaluating proposed bargaining units set forth in *Specialty Healthcare & Rehabilitation Center of Mobile*, 357 N.L.R.B. 934 (2011), is unlawful. Under this framework, the National Labor Relations Board (the "Board") uses a two-step analysis to determine whether a union's proposed bargaining unit consists of employees who share a "community of interests" and does not arbitrarily exclude other employees. Several sister circuits recently approved this standard, but we have yet to opine on this question.[1] The second question is whether the Board properly applied the *Specialty Healthcare* framework in its order at issue in this case.

We hold the *Specialty Healthcare* framework to be valid, as our sister circuits have, and to be consistent with this Court's precedent. We conclude, however, that the Board did not properly apply the *Specialty Healthcare* framework in its decision and order against Constellation Brands, U.S. Operations, Inc., d/b/a Woodbridge Winery ("Constellation"). In approving the petitioned-for collective bargaining unit, the Board did not analyze at step one of the *Specialty*

---

[1] *See Kindred Nursing Ctrs. E., LLC v. NLRB*, 727 F.3d 552 (6th Cir. 2013) (enforcing the original *Specialty Healthcare* case); *accord FedEx Freight, Inc. v. NLRB*, ---F.3d---, 2016 WL 5929822 (7th Cir. Oct. 12, 2016); *NLRB v. FedEx Freight, Inc.*, 832 F.3d 432 (3d Cir. 2016); *Nestle Dreyer's Ice Cream Co. v. NLRB*, 821 F.3d 489 (4th Cir. 2016) (rejecting challenge under the National Labor Relations Act and the Administrative Procedure Act); *Macy's, Inc. v. NLRB*, 824 F.3d 557 (5th Cir. 2016); *FedEx Freight, Inc. v. NLRB*, 816 F.3d 515 (8th Cir. 2016).

*Healthcare* framework whether the excluded employees had meaningfully distinct interests from members of the petitioned-for unit in the context of collective bargaining that outweigh similarities with unit members.

Accordingly, we **GRANT** the petition for review, **DENY** the Board's cross-petition for enforcement, and **REMAND** the cause to the Board for further proceedings consistent with the record of this matter and this opinion.

## BACKGROUND

Constellation owns and operates Woodbridge Winery in California, which employs about 100 managers and 200 production and maintenance employees. Its employees are divided into various departments. This case concerns the cellar operations department, which is organized into two subgroups: "outsider cellar" with 46 employees and "barrel" with 18 employees. The parties dispute whether the "outside cellar" employees form a group that is sufficiently distinct from the "barrel" employees (as well as from Constellation's other employees) that they may be treated separately for collective bargaining purposes under Section 9 of the National Labor Relations Act ("NLRA").[2]

---

[2] 29 U.S.C. § 159 (laying out the procedures by which the Board resolves a question of representation and directs an election).

The certification of a bargaining unit falls largely to the Board's Regional Directors ("RDs"), who are appointed by the General Counsel and approved by the Board, and to hearing officers in the regional offices, who report to the RDs.[3] Parties seeking to determine whether a particular labor organization has majority support in a workplace submit a petition for an election to the Board's regional office.[4] Where the parties do not agree on an appropriate bargaining unit, a hearing officer will conduct a representation hearing to "determine the unit appropriate for the purposes of collective bargaining, to investigate and provide for hearings, and determine whether a question of representation exists, and to direct an election or take a secret ballot . . . and certify the results thereof."[5] Based on the hearing officer's report, the RD will decide on the petition and, if warranted, direct an election and prescribe its procedures. Although

---

[3] *See id.* § 153(b) ("The Board is . . . authorized to delegate to its regional directors its powers . . . to determine the unit appropriate for the purpose of collective bargaining . . . ."); 29 C.F.R. § 102.64 (2015) (describing the conduct of hearings before hearing officers); *id.* § 102.67 (concerning proceedings before RDs).

While substantial power has been delegated to the RDs, the Board's General Counsel, a Presidential appointee whose nomination is subject to the advice and consent of the Senate, retains the ultimate authority with respect to "the investigation of charges and issuance of complaints" under the NLRA. *See* 29 U.S.C. § 153(d).

[4] *See id.* § 159(c) (requiring a petition be filed to seek Board approval of a proposed bargaining unit).

[5] *Id.* § 153(b).

parties have the right to appeal the RD's decision to a three-member panel of the Board, the Board's review is discretionary and granted only in limited circumstance.[6] Following the Board's review, elections are held and the RD may certify the results.

On September 2, 2014, the Teamsters Local Union 601 (the "Union") filed a petition seeking to represent Constellation's outside cellar employees as a bargaining unit. Constellation objected, arguing that an appropriate unit should encompass all production and maintenance employees or, at a minimum, all cellar operations employees. Following a hearing, the RD decided in favor of the Union and directed that an election be held. In determining that the Union's proposed bargaining unit of outside cellar employees was appropriate, the RD applied the *Specialty Healthcare* standard. On February 26, 2015, a three-member panel of the Board (Chairman Pearce, Member Hirozawa, and Member McFerran) denied Constellation's request to review the RD's decision, stating that

---

[6] *See* 29 C.F.R. § 102.67(d) (2015) ("The Board will grant a request for review only where compelling reasons exist therefor. . . . [R]eview may be granted only upon one or more of the following grounds: (1) That a substantial question of law or policy is raised because of: (i) [t]he absence of; or (ii) [a] departure from, officially reported Board precedent. (2) That the regional director's decision on a substantial factual issue is clearly erroneous on the record and such error prejudicially affects the rights of a party. (3) That the conduct of any hearing or any ruling made in connection with the proceeding has resulted in prejudicial error. (4) That there are compelling reasons for reconsideration of an important Board rule or policy.").

Constellation had "raise[d] no substantial issues warranting review." Special App. 4.

In the Board-ordered election, the outside cellar employees voted 31–13 to unionize and the RD certified the Union as the collective-bargaining representative of those employees. Following the usual procedure for contesting the validity of a union election, Constellation refused to bargain with the Union, which then filed an unfair-labor-practice charge.[7] On July 29, 2015, a three-member Board panel granted the General Counsel's motion for summary judgment and concluded that Constellation had violated the NLRA by refusing to bargain.[8] Constellation subsequently petitioned for review of that decision, and the Board filed a cross-petition for enforcement.

**JURISDICTION**

While both parties agree that we have jurisdiction, we nonetheless consider the issue independently.[9] The Board had

---

[7] The well-settled practice for challenging the appropriateness of a bargaining unit is refusing to bargain with the proposed unit and then defending against an unfair labor practice charge on the ground that the unit is inappropriate. *See, e.g., NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 709 (2001) ("Because direct judicial review of representation determinations is unavailable, . . . the respondent sought indirect review by refusing to bargain with the union, thereby inducing the General Counsel of the Board to file an unfair labor practice complaint under §§ 8(a)(1) and 8(a)(5) [of the NLRA]." (citation omitted)).

[8] *See Constellation Brands*, 362 N.L.R.B. No. 151 (2015).

[9] *See, e.g., Taylor v. Rogich*, 781 F.3d 647, 648 n.2 (2d Cir. 2015).

jurisdiction over the original petition under 29 U.S.C. § 160(a)–(c), which empowers the Board to prevent unfair labor practices.[10] Since Constellation is a New York corporation and transacts business within this Circuit, we have jurisdiction over the petition for review and the cross-petition for enforcement under 29 U.S.C. § 160(f).[11]

---

[10] 29 U.S.C. § 160(a)–(c) provides, in relevant part: "The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. . . . If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter . . . ."

[11] 29 U.S.C. § 160(f) provides: "Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business . . . by filing in such a court a written petition praying that the order of the Board be modified or set aside."); *see also Boire v. Greyhound Corp.*, 376 U.S. 473, 476–79 (1964).

In addition, 29 U.S.C. § 159(d) stipulates that the record and findings made in the underlying representation proceeding is part of the record before this Court. It provides: "Whenever an order of the Board…is based in whole or in part upon facts certified following an investigation pursuant to subsection (c) of this section and there is a petition for the enforcement or review of such order, such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed under subsection (e) or (f) of section 160 of this title, and thereupon the decree of the court enforcing, modifying, or setting aside in whole or in part the order of the Board shall be

## DISCUSSION

### A. The Legality of the *Specialty Healthcare* Framework

The threshold question presented is whether we, along with six of our sister circuits,[12] should also adopt the *Specialty Healthcare* framework. "[W]e review the Board's legal conclusions to ensure that they have a reasonable basis in law."[13]

When considering a petition for a proposed bargaining unit, an RD has discretion to approve *any* appropriate unit, not just "*the* single most appropriate unit."[14] To guide its discretion, the RD has traditionally asked whether the members of the proposed unit share a "community of interests distinct from their interests as employees of the whole institution."[15] In *Specialty Healthcare*, the Board clarified this traditional approach by introducing a new, two-step analysis.

made and entered upon the pleadings, testimony, and proceedings set forth in such transcript."

[12] *See ante* note 1.

[13] *NLRB v. Special Touch Home Care Servs., Inc.*, 566 F.3d 292, 296–97 (2d Cir. 2009) (quotation marks omitted).

[14] *Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 610 (1991). This discretion is derived from 29 U.S.C. § 159(b) that states, in relevant part: "The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining . . . ." *Id.*

[15] *Staten Island Univ. Hosp. v. NLRB*, 24 F.3d 450, 454 (2d Cir. 1994).

"[I]n step one, the Board [*i.e.*, the RD] performs a community-of-interest analysis to determine whether the proposed unit is appropriate; if the unit is found appropriate, in step two [the party opposing certification] must demonstrate that the excluded employees it wishes to include share an 'overwhelming community of interest' with the included employees."[16]

While the RD's discretion in determining the appropriateness of a bargaining unit is broad, it is not unlimited. Section 9(c) of the NLRA explicitly states that "[i]n determining whether a unit is appropriate . . . the extent to which the employees have organized shall not be controlling."[17] The Board has long disfavored fractured units that may arbitrarily exclude certain groups of employees or could invite "gerrymandering" of interests among employees.[18]

---

[16] *Nestle Dreyer's*, 821 F.3d at 496 (emphasis omitted) (quoting *Specialty Healthcare*, 357 N.L.R.B. at 944).

[17] 29 U.S.C. § 159(c)(5).

[18] Francis Biddle, an architect of the NLRA, the second Chairman of the National Labor Board (the predecessor of the Board), and later, Attorney General of the United States, was a vocal opponent of fractured units during the Senate committee hearings prior to the passage of the NLRA: "If the employees themselves could make the decision without proper consideration of the elements which should constitute the appropriate units they could in any given instance defeat the practical significance of the majority rule; and, by breaking off into small groups, could make it impossible for the employer to run his plant." *See Hearings of S. 1958 Before the S. Comm. On Educ. & Lab.*, 74th Cong. 82 (1935), (statement of Francis Biddle), *reprinted in* 1 NLRA LEGISLATIVE HISTORY 1458–59. He further recognized then that there was always the risk "of your Board gerrymandering and not carrying out the purposes of the Board," but noted that

Today, it is well established under Board precedent that "the Board does not approve fractured units, *i.e.*, combinations of employees that are too narrow in scope or that have no rational basis."[19]

---

"any arbitrary act of the Board in selecting the unit is subject to check on review by the court." *Id.*

For many years, the Board presumed store-wide or plant-wide units to be appropriate over multiple representation units within an employer. *See, e.g., Laurel Assocs., Inc., d/b/a Jersey Shore Nursing & Rehab. Ctr.*, 325 N.L.R.B. 603 (1998) (service and maintenance unit in nursing home is presumptively appropriate); *Gourmet, Inc., d/b/a Jackson's Liquors*, 208 N.L.R.B. 807, 808 (1974) ("The employerwide unit . . . is presumptively appropriate."); *Kalamazoo Paper Box Corp.*, 136 N.L.R.B. 134, 136 (1962) ("A plantwide unit is presumptively appropriate under the Act, and a community of interest inherently exists among such employees."); *May Dep't Stores, Co.*, 97 N.L.R.B. 1007, 1008 (1952) (declaring a "store-wide unit" to be "the optimum unit for the purpose of collective bargaining" in the retail industry).

This Circuit has long held a preference for consolidating bargaining units. *See, e.g., Staten Island Univ. Hosp*, 24 F.3d at 456 ("We regard the single-facility presumption as the kind of rebuttable presumption that was beyond dispute in *American Hospital.*"); *accord NLRB v. Phoenix Programs of N.Y., Inc.*, 2 F. App'x 166, 168–69 (2d Cir. 2001) (summary order) (affirming the Board's determination that the employer failed to rebut the "single-facility presumption").

[19] *Seaboard Marine, Ltd.*, 327 N.L.R.B. 556 (1999).

The Board has maintained this governing approach following the *Specialty Healthcare* decision in 2011. *See, e.g., A.S.V., Inc.*, 360 N.L.R.B. No. 138 (2014) (applying *Specialty Healthcare* and rejecting the proposed unit as "fractured" and thus inappropriate); *Odwalla, Inc.*, 357 N.L.R.B. 1608, 1612-13 (2011) (applying *Specialty Healthcare* to find that the recommended unit was an inappropriate "fractured unit" and to further suggest that, even if a smaller constituent part of a proposed unit would constitute an appropriate free-standing unit, the unit may

Certain interested groups argue that the *Specialty Healthcare* test essentially creates a presumption in favor of "micro" unions, causing the undue proliferation of bargaining units that make it difficult for employers to settle labor disputes and that arbitrarily exclude certain employees.[20] In addition to the increased costs to employers of administering multiple contracts and benefit plans or reconciling conflicting demands from separate units, "micro" unions may also, the interested groups argue, diminish the rights of employees.[21] These groups argue that the proliferation of units can allow one bargaining unit to disrupt the operations of an enterprise with unique demands not shared by other employees. "Micro" unions can also make it more difficult for employees to access new opportunities across units and may diminish the overall power of

---

nevertheless become inappropriate if additional employees are proposed for inclusion who have less community of interest with one another than do the excluded employees).

[20] *See* Brief for Amici Curiae Coalition for a Democratic Workplace, Chamber of Commerce of the United States of America, National Association of Manufacturers, National Retail Federation, and Retail Litigation Center, Inc., at 22-24, *Constellation Brands v. NLRB*, No. 15-2442-ag (2d Cir. Dec. 16, 2015), ECF No. 46.

[21] *See Cont'l Web Press, Inc. v. NLRB*, 742 F.2d 1087, 1090 (7th Cir. 1984) ("[B]reaking up a work force into many small units creates a danger that some of them will be so small and powerless that it will be worth no one's while to organize them, in which event the members of these units will be left out of the collective bargaining process.").

labor by creating units so small that they lack influence.[22] Outside groups also echo Constellation's objections that the *Specialty Healthcare* framework is a departure from decades of Board cases[23] and inconsistent with the NLRA.[24]

In the present case, Constellation asserts two objections to the *Specialty Healthcare* test. First, it argues that this test impermissibly gives controlling weight to the extent to which employees have already been organized, thereby departing from past precedent of the Board and contravening the statutory language of the NLRA. Under the prior framework, Constellation argues, the RD had to determine whether the petitioned-for unit had interests "sufficiently distinct from" those of excluded employees as part of the "community of interest" analysis.[25] Under *Specialty Healthcare*, in contrast, that determination of "sufficiently distinct interests" is postponed until

---

[22] *See NLRB v. Purnell's Pride, Inc.*, 609 F.2d 1153, 1156 (5th Cir. 1980) ("[T]he designation of . . . small unit[s] that exclude[] employees with common skills, attitudes, and economic interests may unnecessarily curtail the union's bargaining power and may generate destructive factionalization and in-fighting among employees.").

[23] *See, e.g., ante* notes 18 and 19 (discussing the Board's historical preference for employer-wide units and opposition to fractured units); *but see, e.g., Montgomery Ward & Co.*, 150 N.L.R.B. 598, 601 (1964) ("[T]he Board has held that the appropriateness of an overall unit does not establish that a smaller unit is inappropriate.").

[24] 29 U.S.C. § 159(b), (c)(5).

[25] *See, e.g., Wheeling Island Gaming, Inc.*, 355 N.L.R.B. 637, 638 (2010).

step two, at which point the employer must show that excluded employees shared an "*overwhelming* community of interest" with the *presumptively* appropriate petitioned-for group.[26] This heightened showing, Constellation argues, makes it nearly impossible for an employer to resist unions' efforts to gerrymander bargaining units.

This concern is misplaced. Step one of *Specialty Healthcare* expressly requires the RD to evaluate several factors relevant to "whether the interests of the group sought were sufficiently distinct from those of other employees to warrant the establishment of a separate unit."[27] For instance, the Board must consider "[w]hether the employees are organized into a *separate* department; have *distinct* skills and training; have *distinct* job functions and perform *distinct* work . . . ; are functionally integrated with the Employer's other employees; . . . have *distinct* terms and conditions of employment; and are *separately* supervised."[28] Accordingly, it seems to us that *Specialty Healthcare* does not significantly redefine the showing required of a party seeking Board approval in establishing a bargaining unit. Nor does it contravene Section 9(c) of the NLRA by giving union organizers an inappropriate degree of control.

---

[26] *Nestle Dreyer's*, 821 F.3d at 496 (quoting *Specialty Healthcare*, 357 N.L.R.B. at 944).

[27] *Id.* at 500 (brackets and internal quotation marks omitted).

[28] *Specialty Healthcare*, 357 N.L.R.B. at 942 (emphases added) (internal quotation marks omitted).

Constellation's second argument against adoption of the rule of *Specialty Healthcare* is that the Board failed to provide a reasoned explanation for the new standard.[29] This argument is also unpersuasive. Step one of *Specialty Healthcare* adopts verbatim the "community of interest" test on which the Board has long relied.[30] Step two is a novel formulation called the "overwhelming community of interest" test, but its substance is consistent with earlier Board precedents that imposed a heightened burden on a party who urges the Board to add employees to a unit that has otherwise been deemed appropriate. Moreover, the phrase "overwhelming community of interest" was taken from a decision of the United States Court of Appeals for the District of Columbia Circuit, which itself purported to summarize relevant Board precedents.[31] One might question the desirability of the Board's approach. Yet it seems implausible to claim that a Board decision, announced in a 14-page opinion (exclusive of the dissent) that borrows heavily from Board and appellate precedent, is invalid because it failed to explain itself.

---

[29] *See Serv. Emps. Int'l Union, Local 32BJ v. NLRB*, 647 F.3d 435, 442 (2d Cir. 2011) ("Where the Board departs from prior interpretations of the Act without explaining why that departure is necessary or appropriate, the Board will have exceeded the bounds of its discretion." (internal quotation marks omitted)).

[30] *See Allied Chem. & Alkali Workers, Local Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div.*, 404 U.S. 157, 172–73 (1971); *Kalamazoo Paper Box Corp.*, 136 N.L.R.B. at 137.

[31] *See Blue Man Vegas, LLC v. NLRB*, 529 F.3d 417, 421–23 (D.C. Cir. 2008).

In sum, Constellation has failed to meet its burden of showing that the *Specialty Healthcare* framework is inconsistent with the NLRA or meaningfully departs from the Board's past precedents.

## B. Did the Board Correctly Apply *Specialty Healthcare*?

We now turn to the application of the *Specialty Healthcare* framework in this case. In reviewing the Board's decision of unit appropriateness, we are mindful that our task is not to substitute our judgment for that of the Board.[32] The Board is empowered to determine whether a unit is appropriate for the purposes of collective bargaining[33] and "select from those possible arrangements in reaching its unit determination."[34] Although the Board's determination that a bargaining unit is appropriate "will stand unless arbitrary and unreasonable,"[35] we conclude that the RD misapplied the *Specialty Healthcare* framework at step one.

---

[32] *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) ("Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial . . . ."; *see also Banknote Corp. of Am. v. NLRB*, 84 F.3d 637, 651 (2d Cir. 1996).

[33] 29 U.S.C. § 159(b).

[34] *Staten Island Univ. Hosp.*, 24 F.3d at 455.; *see also Universal Camera Corp.*, 340 U.S. at 488.

[35] *Staten Island Univ. Hosp.*, 24 F.3d at 455.

### 1. Step One: "Community of Interest"

Constellation argues that the *Specialty Healthcare* standard improperly rubber stamps a union's organizing efforts by presumptively approving the petitioned-for unit and creating too high a burden for the objecting party.[36] We rejected that argument above precisely because *Specialty Healthcare* indeed requires the Board to consider, at step one, whether members of the proposed unit have an interest that is "separate and distinct" from all other employees.[37] But merely reciting or repeating the standard cannot substitute for the analysis that *Specialty Healthcare* demands.

The RD (whose decision the Board declined to review) did not make the step-one determination required by *Specialty Healthcare*. Although he appropriately recited the community of interest standard, and declared that "employees in the petitioned-for unit share distinct characteristics," Special App. 34, the RD did not explain *why* those employees had interests "sufficiently distinct from

---

[36] Constellation argues that the *Specialty Healthcare* test created a new legal standard. By deferring analysis of whether other employees were unjustifiably excluded until step two, the opposing party must now show excluded employees share an "*overwhelming* community of interests" (not merely a "community of interests"). This higher showing, Constellation contends, violates Section 9(c) of the NLRA by giving controlling weight to the extent to which employees have already been organized. The Board counters that the *Specialty Healthcare* framework "clarified—rather than overhauled—its unit-determination analysis." *See Nestle Dreyer's*, 821 F.3d at 500.

[37] *Specialty Healthcare*, 357 N.L.R.B. at 942.

18

those of other employees to warrant the establishment of a separate unit."[38] Rather, the RD based his step-one determination on his finding "that the employees in that unit are a readily identifiable group, such that there is a rational basis for grouping them together in a bargaining unit."[39] Special App. 32. Reciting the legal framework does not substitute for analysis of differences between unit-members and other employees, as required by *Specialty Healthcare*. Indeed, as one of our sister circuits has stated, the very purpose of step one is "to guard against arbitrary exclusions" that have no purchase in the context of collective bargaining.[40]

To be sure, the RD made a number of *factual* findings that tend to show that outside cellar employees had interests distinct from other employees. But he never explained the weight or relevance of those findings. For instance, the RD did not explain why some factual findings, which seemed to indicate the presence of distinct interests,

---

[38] *Nestle Dreyer's*, 821 F.3d at 500 (internal quotation marks omitted).

[39] While the RD purported to identify differences between members of the petitioned-for unit and other employees at step one, the language was little more than boilerplate. It seems highly unlikely, for example, that only employees of the petitioned-for cellar unit "unlike the unit of employees sought by the Employer . . . must demonstrate skills of lower-level job classifications before moving up to higher-level job classifications within the department," as the RD claims. Special App. 32-33. It seems implausible that non-cellar employees need not "demonstrate skills" before being promoted. The RD's remaining findings of differences are similarly conclusory.

[40] *Nestle Dreyer's*, 821 F.3d at 499.

*e.g.*, "physically separate locations" or "separate front-line [and] immediate supervisors," should have outweighed other findings of similarities, *e.g.*, similar "job functions and duties," evidence of "interchange" and "work[ing] together," and "identical skills and training requirements." Special App. 44 n.20. To the extent that the RD did provide such explanations, it did so only at step two, *i.e.*, only to rebut a heightened showing that the excluded employees share an "*overwhelming* community of interest" with the presumptively appropriate petitioned-for unit. This misapplication of *Specialty Healthcare* requires us to deny the Board's petition for enforcement.[41]

Our sister circuits have accepted the *Specialty Healthcare* framework based on the understanding that it requires the Board to ensure, at step one, that employees are not inappropriately "excluded [from a bargaining unit] on the basis of meager differences."[42] To properly apply this framework, the Board must *analyze* at step one

---

[41] The Board cannot recite the legal standard and summarize the factual record without any intervening explanation to demonstrate that it has performed the analysis demanded by its own caselaw. *See, e.g., Long Island Head Start Child Dev. Servs. v. NLRB*, 460 F.3d 254, 257–58 (2d Cir. 2006)("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see also New England Health Care Emps. Union v. N.L.R.B.*, 448 F.3d 189, 194 (2d Cir. 2006) ("[W]e may not supply a reasoned basis for the agency's action that the agency itself has not given . . . ." (internal quotation marks omitted)).

[42] *Nestle Dreyer's*, 821 F.3d at 500 (internal quotation marks omitted); *accord FedEx Freight*, 832 F.3d at 442–43.

the facts presented to: (a) identify shared interests among members of the petitioned-for unit, *and* (b) explain why excluded employees have meaningfully distinct interests in the context of collective bargaining that *outweigh* similarities with unit members.[43] Merely recording similarities or differences between employees does not substitute for an explanation of how and why these collective-bargaining interests are relevant and support the conclusion. Explaining why the excluded employees have distinct interests in the context of collective bargaining is necessary to avoid arbitrary lines of demarcation and to avoid making step one of the *Specialty Healthcare* framework a mere rubber stamp.

While the RD has discretion to approve of "*an* appropriate unit, not the *most* appropriate unit,"[44] he may exercise that discretion only after finding, upon analysis, that a petitioner has met its "prima facie" burden under the *Specialty Healthcare* framework. The RD failed to do so here. Nor did the Board exercise its power of review to ensure that the new framework was being appropriately applied. Without this critical first step of the *Specialty Healthcare* framework,

---

[43] *Cf. FedEx Freight*, 832 F.3d at 443 (requiring analysis of "similarities between the employees in the petitioned-for unit and whether their interests were sufficiently distinct from other employees"); *Staten Island Univ. Hosp.*, 24 F.3d at 454 (describing the unit-determination as turning on a finding of "the degree to which employees . . . share a community of interests distinct from their interests as employees of the whole institution").

[44] *Staten Island Univ. Hosp.*, 24 F.3d at 455 (citation omitted).

21

the burden would be exclusively on the employer to prove the absence of distinctions. Such a burden is inconsistent with the NLRA and the Board's past precedent.

### 2. Step Two: "Overwhelming Community of Interests"

Constellation argues that it should also prevail at step two of the *Specialty Healthcare* framework, known as the "overwhelming community of interests" test, which requires that Constellation show "that there is no legitimate basis upon which to exclude" barrel employees from that unit.[45] We need not reach this question. Since the Board failed to perform the requisite analysis at step one, its decision and order dated July 29, 2015 against Constellation cannot stand.

### CONCLUSION

To summarize, we hold as follows:

(1) The Board's framework set forth in *Specialty Healthcare* for determining a bargaining unit's appropriateness is consistent with the NLRA and the Board's past precedent. Constellation failed to show that the *Specialty Healthcare* framework essentially creates a presumption in favor of "micro" unions by inappropriately placing the burden on

---

[45] *See Specialty Healthcare*, 357 N.L.R.B. at 944 (internal quotation marks omitted).

22

the opposing party to prove the absence of distinction—which, if true, would have been a departure from past precedent and inconsistent with the NLRA.

(2) Adopting the *Specialty Healthcare* framework, we conclude that the Board misapplied step one of that framework. It failed to require that the proponent of a proposed bargaining unit meet its "prima facie" burden of showing why the excluded employees had distinct interests from employees of the petitioned-for unit in the context of collective bargaining, that is, (a) identifying shared interests among employees of the petitioned-for unit *and* (b) explaining why excluded employees have meaningfully distinct interests in the context of collective bargaining that outweigh similarities with unit members.

Accordingly, we **GRANT** the petition for review, **DENY** the Board's cross-petition for enforcement, and **REMAND** the cause to the Board for further proceedings consistent with the record of this matter and this opinion.