In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 19-1321 & 19-1549

CONSTELLATION BRANDS U.S. OPERATIONS, INCORPORATED,
doing business as Woodbridge Winery,

*Petitioner, Cross-Respondent,*

*v.*

NATIONAL LABOR RELATIONS BOARD,

*Respondent, Cross-Petitioner.*

———————

Petition for Review and Cross-Application
for Enforcement of an Order
of the National Labor Relations Board.
Nos. 32-CA-186238, 32-CA-186265

———————

ARGUED JANUARY 13, 2021 — DECIDED MARCH 30, 2021

———————

Before FLAUM, BRENNAN, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. In early 2017 a union alleged that Woodbridge Winery violated the National Labor Relations Act by directing an employee to remove pro-union clothing and maintaining a policy that limited bonus eligibility to non-union employees. An administrative law judge and the National Labor Relations Board agreed that Woodbridge engaged in unfair labor practices. Because the Board's decision

is supported by substantial evidence, we deny Woodbridge's petition for review and enforce the Board's order.

# I

## A

Constellation Brands owns and operates Woodbridge Winery in Acampo, California. There, in California's Central Valley, employees in Woodbridge's so-called cellar department work to turn grapes into wine before the bottling process begins. In 2015 Woodbridge's cellar department employees decided to unionize, held an election, and certified the Local 601 chapter of the International Brotherhood of Teamsters as their collective bargaining representative. From there, however, the collective bargaining process stalled. Woodbridge refused to engage with the union and challenged the certification before the National Labor Relations Board. Although the Board ordered Woodbridge to bargain with the union, the winery successfully challenged the order on appeal, and the case is now back pending and unresolved before the Board. See *Constellation Brands, U.S. Operations, Inc. v. NLRB*, 842 F.3d 784 (2d Cir. 2016).

Tensions over the unionization and the collective bargaining impasse remained high within Woodbridge in the summer of 2016. It was then that Manuel Chavez, a pro-union advocate who worked in Woodbridge's cellar department, decided to express his support for the union cause by writing "Cellar Lives Matter" with a marker on the back of his safety vest. Chavez explained that he devised the slogan because he thought it was both true and catchy—drawing upon the well-recognized Black Lives Matter movement. In his own words, Chavez explained that "[a]s a department and as individuals

we put—we do everything we have to do to make sure that wine is ready for bottle ready. So therefore, Cellar Lives Matter."

Chavez wore the vest each day from July 20 to August 4, 2016. During that period, no employee complained to him about the Cellar Lives Matter slogan, and indeed, Chavez reported that many of his co-workers responded positively. On August 4, however, Woodbridge's General Manager informed Chavez that "numerous people" found the slogan offensive in the "current political situation" and directed him to stop wearing the vest. For his part, Chavez responded by explaining that the slogan was in no way racially motivated, and instead was all and only about supporting the union's position in the ongoing collective bargaining dispute. Chavez asked if he could write a different pro-union message on his vest, but his supervisors refused. He then stopped wearing the vest.

B

In January 2017 the Local 601 Union filed charges against Woodbridge, and, separately, the National Labor Relations Board's General Counsel issued a consolidated unfair labor practices complaint against the winery. The union alleged that Woodbridge violated section 8(a)(1) of the National Labor Relations Act by directing Chavez to stop wearing clothing bearing any pro-union message. The Local 601 also raised a second charge, altogether unrelated to Chavez and his workplace clothing, that Woodbridge violated the Act by maintaining a policy in its employee handbook that limited eligibility for a bonus program to "non-union full time and regular part-time employees of the Company."

An administrative law judge held a three-day hearing and issued an order finding that Woodbridge had violated the Act on both fronts. As for the Cellar Lives Matter slogan, the ALJ found that Woodbridge could not justify preventing Chavez from engaging in pro-union speech in the workplace. The record, the ALJ observed, contained no evidence that Chavez intended to denigrate the Black Lives Matter movement, finding instead that it was Woodbridge's supervisors who insinuated that "any slogan associated with the BLM movement was too controversial and inflammatory." Not a single rank-and-file employee, the ALJ continued, complained about the slogan. Nor did Woodbridge show that the slogan caused disruption to Woodbridge's operations or presented any risk to anyone's safety. In these circumstances, the ALJ concluded, Woodbridge's suppression of Chavez's pro-union speech violated section 8(a)(1) of the Act.

The ALJ then turned to the bonus-eligibility policy in Woodbridge's employee handbook. The ALJ found that the policy, by its terms, limited participation in Woodbridge's bonus plan to non-union employees, in violation of Board precedent interpreting section 8(a)(1) of the Act.

The National Labor Relations Board affirmed. Woodbridge then sought our review of the Board's order, and the Board cross-petitioned for enforcement. See 29 U.S.C. § 160(f) (authorizing judicial review of a Board order granting or denying relief in any circuit court in which the unfair labor practice has allegedly occurred or where the appealing party resides or transacts business).

**II**

Section 7 of the National Labor Relations Act guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. The Act protects this right in many ways, including in section 8(a)(1) by prohibiting an employer from acting "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [section 7]." *Id.* § 158(a)(1). To establish a violation of section 8(a)(1), "[n]o proof of coercive intent or effect is necessary," and we ask only "whether the employer engaged in conduct, which, it may reasonably be said, tends to interfere with the free exercise of employee rights under the Act." *Brandeis Mach. & Supply Co. v. NLRB*, 412 F.3d 822, 830 (7th Cir. 2005) (alteration in original) (citation omitted).

Our review of a Board decision is limited. We look for whether substantial evidence supports the Board's factual findings and whether legal conclusions have a reasonable basis in law. See *Rochelle Waste Disposal, LLC v. NLRB*, 673 F.3d 587, 592 (7th Cir. 2012). These standards are not demanding: a finding is supported by substantial evidence if "a reasonable mind might accept" its truth. See *SCA Tissue N. Am. LLC v. NLRB*, 371 F.3d 983, 988 (7th Cir. 2004) (citation omitted); see also *id.* at 987–88 (describing our review of a Board decision as "circumscribed" and reminding that "we must not dabble in fact-finding and may not dispute reasonable determinations'" (citation omitted)). The party challenging the Board's determination bears the burden of proof. See *Int'l Union of Operating Eng'rs, Local 150 v. NLRB*, 47 F.3d 218, 222 (7th Cir.

1995). Where, as here, the Board adopts the ALJ's findings of fact and conclusions of law, our review focuses on the ALJ's order. See *SCA Tissue N. Am. LLC*, 371 F.3d at 988.

## A

We begin with the ALJ's conclusion that Woodbridge violated section 8(a)(1) of the National Labor Relations Act by ordering Chavez to stop wearing the vest with the Cellar Lives Matter slogan. We also start from the common recognition by the parties that section 7 of the Act protects an employee's right to wear clothing bearing pro-union messages "as part of concerted activity to assist the union." *Brandeis Mach.*, 412 F.3d at 832 (quoting *NLRB v. Shelby Mem'l Hosp. Ass'n*, 1 F.3d 550, 556 (7th Cir. 1993)). An employer violates section 8(a)(1) when it curtails that right, see *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 802–03 n.7 (1945), and indeed such action is presumptively invalid. See *Medco Health Sols. of Las Vegas, Inc.*, 364 N.L.R.B. 115, at *4 (2016).

An employee's right to wear union insignia is not absolute, however. An employer may restrain an employee's pro-union speech "when the employer demonstrates that special circumstances exist which justif[y] the banning of union insignia." *Brandeis Mach.*, 412 F.3d at 832 (citation omitted). Special circumstances may be present where a message would "jeopardize employee safety, damage machinery or products, exacerbate employee dissension, or unreasonably interfere with a public image that the employer has established, as part of its business plan, through appearance rules for its employees." *Medco Health Sols.*, 364 N.L.R.B. 115, at *4. The employer shoulders the obligation of showing the presence of special circumstances. See *Brandeis Mach.*, 412 F.3d at 832.

The ALJ applied these principles and, based on evidence presented during a three-day evidentiary hearing, found that the Cellar Lives Matter slogan expressed a pro-union message that enjoys protection under the Act. We cannot say this finding lacks substantial support in the record. Chavez penned the slogan on his work vest in an effort to promote the fledgling union and to protest Woodbridge's refusal to recognize and bargain with the union. He donned the vest during a two-week period in the summer of 2016, when Woodbridge had appealed the Board's order directing collective bargaining to proceed, and thus much uncertainty remained over the entire unionization effort within the winery and its cellar department. Right to it, Chavez chose to express a pro-union message at a time when he believed doing so was important—all to support his colleagues in the cellar department who likewise wanted to unionize. Time and place matter with speech.

The ALJ also reasonably determined that Woodbridge failed to identify special circumstances justifying the winery's restriction of Chavez's pro-union expression. Chavez wore the vest solely while working in Woodbridge's grape processing center. His job within the cellar department entailed no customer contact, no interactions with third-party suppliers, and no public-facing role of any kind. His immediate supervisor uttered not a word of concern about the slogan. In short, the two-week period during which Chavez wore the vest was uneventful and unremarkable.

We can put the same points in terms of what the record does not show. There is no evidence of Chavez's co-workers telling him they found the slogan offensive or racially charged. Nor did Woodbridge make any showing of any employee approaching Chavez or his supervisor to express a

concern about workplace morale or any disruption with Woodbridge's wine production or, for that matter, any other aspect of the winery's operations. Adhering to the deferential standard that guides our review, we are confident the ALJ's finding is supported by substantial evidence. See *NLRB v. Aluminum Casting & Eng'g Co.*, 230 F.3d 286, 289 (7th Cir. 2000).

Woodbridge disagrees and asserts that at least three special circumstances justified directing Chavez to stop wearing the vest. We see each contention differently.

*First*, Woodbridge contends that pro-union speech may not "appeal to ethnic prejudices," *Komatsu Am. Corp.*, 342 N.L.R.B. 62, at *3 (2004), and the company must have the right to prohibit racially insensitive speech in the workplace. This contention is surely right at that level of generality. But the question from there is whether it was reasonable for the ALJ, based on the facts and circumstances presented here, to find that Chavez's Cellar Lives Matter slogan conveyed a pro-union message without an accompanying racially insensitive connotation.

In resolving the question, our role is not to "displace the Board's choice between two fairly conflicting views" even if we "would justifiably have made a different choice." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). That deferential standard all but resolves Woodbridge's challenge. The ALJ's conclusion that Woodbridge did not present evidence that the Cellar Lives Matter slogan appealed to any prejudice is reasonable. We see no evidence that the slogan criticized or degraded anyone of any race or, even more specifically, the Black Lives Matter movement or mission. To the contrary, all signs point to Chavez's attraction to the slogan precisely

because it might grab the attention of his intended audience—Woodbridge's management—at a time of meaningful tension between union employees and management. As the ALJ put it, the slogan "was an appeal for respect and recognition" inspired by the ongoing collective bargaining dispute.

Nor does our review proceed on a blank slate. We benefit from the Board's resolution of similar cases addressing pro-union speech in the workplace. Take, for example, *Komatsu America Corporation*. See 342 N.L.R.B. 62. The Board in *Komatsu* found that a company with connections to Japan could ban its employees from wearing T-shirts saying "December 7, 1941" and "History Repeats Negotiate Not Intimidate." *Id.* at *2. The Board determined that the "Union's Pearl Harbor T-shirt directly invoked a highly charged and inflammatory comparison between the [employer's] outsourcing plans and the Japanese  sneak attack' on the United States" during World War II—a comparison made "especially inflammatory and offensive because the [employer] is a Japanese-owned company." *Id.* at *3. On those facts, the Board found that the employer met its burden of demonstrating a degree of workplace disruption and unrest that justified banning the T-shirt. See *id.* Not so here. Woodbridge may be right that in some contexts the Cellar Lives Matter slogan could risk undue disruption or present other special circumstances justifying a corporate response. But the ALJ's contrary conclusion that Chavez's slogan did not appeal to prejudice or disparage a civil rights group is supported by substantial evidence.

*Second*, Woodbridge posits that some employees were upset by the slogan and, even more, that an employer must have the freedom to prevent "employee dissension." *Medco Health Sols.*, 364 N.L.R.B. 115, at *4. But Woodbridge has not met its

burden on this score either. Not one of Chavez's co-workers and indeed no non-management employee complained to him about the slogan at any point during the two-week period he wore the vest. Woodbridge insists that it is "obvious" that the Cellar Lives Matter slogan could exacerbate employee dissension. Perhaps in some circumstances. But the company had the affirmative obligation of proving its position with facts and evidence. The ALJ did not find Woodbridge's position so obvious, and that finding is reasonable—especially where an employee's statutory right to expression is at issue. See *Brandeis Mach.*, 412 F.3d at 832; see also *Medco Health Sols.*, 364 N.L.R.B. 115, at *4 (emphasizing that the "special circumstances exception is narrow, and a rule that curtails an employee's right to wear union insignia at work is presumptively invalid" (cleaned up)).

*Third*, Woodbridge asserts that the slogan could have "unreasonably interfere[d] with [its] public image." *Medco Health Sols.*, 364 N.L.R.B. 115, at *4. An employee, Woodbridge imagines, could have posted a photo of the vest on social media as part of an effort to damage the winery's brand. For support, Woodbridge leans on *Noah's New York Bagels, Inc.*, where the Board determined that an employer could prohibit a New York City delivery driver, catering to customers who keep kosher, from wearing a T-shirt bearing the message, "If its not Union, its not Kosher." 324 N.L.R.B. 42 (1997). It is easy to grasp how an insinuation that products are not actually kosher—visible to customers on the clothing of a delivery driver—might harm the company's brand and goodwill. Here, though, Chavez does not interact with customers, and the contention that a photo of his vest could have been posted to social media is precisely the kind of speculative evidence that an employer may not rely on to meet its burden of

demonstrating special circumstances. See *Medco Health Sols.*, 364 N.L.R.B. 115, at \*6 (holding that the employer "has the burden of adducing nonspeculative evidence that [the employee's] shirt adversely affected its business").

The ALJ's conclusion, adopted by the Board—that Woodbridge did not meet its burden to demonstrate special circumstances warranting the infringement on Chavez's statutory rights—is reasonable and supported by substantial evidence.

### B

We need only briefly analyze the altogether separate question regarding the bonus-eligibility policy published in Woodbridge's employee handbook. "It is well settled that an employer violates section 8(a)(1) of the Act through a provision in, or a statement about, a plan which suggests that employees who choose union representation will automatically be excluded from participation." *Voca Corp.*, 329 N.L.R.B. 60, at \*\*11 (1999) (citation omitted). The challenged handbook policy did just that, providing that "[a]ll non-union full time and regular part-time employees of the Company are eligible for the incentive plan." The message is clear and precise: union members are not eligible.

Woodbridge contends that reality contradicts the policy, as all employees are eligible to participate in the incentive plan notwithstanding the language in the handbook. But the fact that no employee has been "rejected for participation in the plan or deprived of benefits thereunder because of union representation is not of significance." *Melville Confections, Inc. v. NLRB*, 327 F.2d 690, 692 (7th Cir. 1964). It is enough that the language by its terms "reasonably tends" to interfere with the free exercise of an employee's right to choose to support

unionization. *Voca Corp.*, 329 N.L.R.B. 60, at **12. Here too, then, the ALJ's conclusion is reasonable and supported by substantial evidence.

For these reasons, we DENY Woodbridge's petition for review and GRANT the Board's application for enforcement.